UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MELODY BYNUM,

                      Plaintiff,

      – against –

MAPLEBEAR INC., d/b/a INSTACART,
                Defendant.

**MEMORANDUM & ORDER**

15-CV-6263

**Parties**

**Appearances**

**Melody Bynum**

represented by **Abdul Karim Hassan**
Abdul Hassan Law Group, PLLC
215-28 Hillside Avenue
Queens Village, NY 11427
718-740-1000
Fax: 718-740-2000
Email: abdul@abdulhassan.com

**Maplebear Inc.**
*doing business as*
Instacart

represented by **Alice Keeney Jump**
Reavis Parent Lehrer LLP
41 Madison Avenue
41st Floor
New York, NY 10010
Email: ajump@rpl-law.com

**Benjamin W. Berkowitz**
**Nikki Vo**
**Ryan Wong**
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA 94111
Email: bberkowitz@kvn.com
Email: nvo@kvn.com
Email: rwong@kvn.com

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

I.  Introduction ........................................................................................................... 2

II.  Factual and Procedural Background ..................................................................... 3

   A.  Parties ............................................................................................................. 3

     1.  Defendant Instacart ................................................................................... 3

     2.  Plaintiff Melody Bynum ............................................................................ 4

   B.  Agreement between Bynum and Instacart ....................................................... 4

     1.  Application Process ................................................................................... 4

     2.  HelloSign ................................................................................................... 5

     3.  Parties' Obligations ................................................................................... 5

     4.  Arbitration Agreement .............................................................................. 6

     5.  Severability ............................................................................................... 7

     6.  Governing Law .......................................................................................... 7

   C.  Defendant's Motion to Compel Arbitration .................................................... 7

III.  Law ...................................................................................................................... 8

   A.  Federal Arbitration Act ................................................................................... 8

   B.  Valid Arbitration Agreement ........................................................................ 10

   C.  Arbitrability of Statutory Claims ................................................................. 12

IV.  Application of Law to Facts ............................................................................... 13

   A.  Valid Arbitration Agreement ........................................................................ 13

     1.  Consent to Arbitrate ................................................................................ 13

     2.  Venue and Unconscionability .................................................................. 15

       a)  Venue .................................................................................................. 15

       b)  Unconscionability ............................................................................... 16

   B.  Arbitrability of FLSA Claims ....................................................................... 18

     1.  FLSA Claims are Arbitrable .................................................................... 18

     2.  Impact of *Cheeks v. Freeport Pancake House* ...................................... 21

   C.  Scope of Arbitration Agreement ................................................................... 22

V.    Conclusion ....................................................................................................................... 23

## I.    Introduction

This case asks the question whether the court can sever unconscionable portions of an arbitration agreement with respect to venue and assessments of legal fees and costs and then order arbitration under the purged agreement. This memorandum and order supports an affirmative answer.

Plaintiff Melody Bynum initiated this action against defendant Maplebear Inc., doing business as Instacart ("Instacart"), on October 30, 2015. Alleged is that she was misclassified as an independent contractor and was not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See generally* Compl., Oct. 30, 2015, ECF No. 1 ("Compl.").

On December 15, 2015, defendant moved to compel arbitration. *See* Notice of Def.'s Mot. to Compel Arbitration, Dec. 15, 2015, ECF No. 10. It argues that there is a valid arbitration agreement between the parties which requires plaintiff to resolve her wage claims through binding arbitration administered by JAMS (a national private organization providing arbitration services). *See generally* Mem. of Law in Supp. of Def.'s Mot. to Compel Arbitration, Dec. 15, 2015, ECF No. 13 ("Def.'s Mem.").

Plaintiff opposes the motion. She contends that FLSA claims are not arbitrable. She seeks additional time to complete discovery on whether there was a valid arbitration agreement. *See generally* Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Compel Arbitration, Jan. 5, 2016, ECF No. 29 ("Pl.'s Mem.").

An evidentiary hearing was conducted on February 8, 2016. *See* Hr'g Tr., Feb. 8, 2016 ("Hr'g Tr."). Following the parties' stipulation to sever the arbitration agreement's venue and fee-

related clauses, defendant's motion to compel was orally granted. Federal law requires enforcement of valid agreements to arbitrate. Without the objectionable venue and fee provisions, the arbitration agreement entered into between the parties is valid.

Plaintiff's testimony as well as the available documentation shows that she received, read and signed the employment contract, which included an agreement to arbitrate. Plaintiff has not argued that she did not understand what she read, or that she did not provide the signature on the contract. She had a reasonable opportunity to examine the arbitration agreement and understand it; there was no overreaching by defendant in presenting the arbitration clause to her.

Plaintiff's dispute over wages and the terms of her employment falls within the broad scope of the arbitration agreement. For the reasons stated on the record and in this memorandum, the case is stayed pending arbitration in New York in accordance with section 3 of the Federal Arbitration Act ("FAA").

## II.     Factual and Procedural Background

### A.     Parties

#### 1. Defendant Instacart

Instacart is a technology company founded in 2012 and headquartered in San Francisco, California. Decl. of Heather Wake in Supp. of Def.'s Mot. to Compel Arbitration, Dec. 15, 2015, ECF No. 11 ("Wake Decl."), at ¶ 2. Through the use of a "communications and logistics platform," Instacart "facilitate[s] connections between customers who wish to purchase grocery items and individuals who are willing to shop for the groceries and/or deliver the groceries to the customers (called 'Personal Shoppers')." *Id.* at ¶ 3. The Instacart platform is used in several cities including San Francisco, Denver, Philadelphia, and New York. *Id.* at ¶ 5. Instacart has operated in New York since March 2014. *Id.*

Customers can create a user account with Instacart and place an online order for groceries from retail stores such as Safeway, PETCO, Costco, Whole Foods Market, and others. *Id*. at ¶ 6. They can also specify whether they want the groceries delivered and the time for delivery. *Id.* Instacart's proprietary communications and logistics technology then connects customers with Personal Shoppers, who are tasked with completing the order. *Id.* at ¶ 7.

### 2. Plaintiff Melody Bynum

Plaintiff Melody Bynum is a resident of Queens County, New York. Compl. at ¶ 7. According to the complaint, she worked for defendant as a Personal Shopper from October 2014 to on or about October 7, 2015, performing delivery work within New York. *Id*. at ¶¶ 11-12.

### B. Agreement between Bynum and Instacart

Plaintiff entered into an Independent Contractor Agreement ("Agreement") with Instacart on October 15, 2014, after applying for the position of Personal Shopper through the Instacart website. Wake Decl. at ¶¶ 9, 12, Ex. A.

### 1. Application Process

In order to become a Personal Shopper, an applicant clicks on a link available on the front page of the Instacart website which says "Become a Shopper." *Id.* at ¶ 8. Clicking on the "Become a Shopper" link takes the applicant to the application section of Instacart's website. The application includes a description of a Personal Shopper's expected tasks (purchasing or delivering groceries, or both), required qualifications, an overview of the application process, and a link that says "Apply Now!" to begin the application. *Id.* Each applicant is required to electronically sign an Independent Contractor Agreement as part of his or her application. *Id.* at ¶ 9, Ex. A.

### 2. HelloSign

HelloSign, an electronic signature service, manages Instacart's Independent Contractor Agreements with Personal Shoppers. *Id.* at ¶ 10. According to defendant, HelloSign uses IP addresses and other identifying data to maintain a time-stamped audit trail that tracks when each Personal Shopper applicant receives, views, and submits each Agreement. *Id.* An applicant is permitted to electronically sign the Agreement after passing various security measures. *Id.* HelloSign's website represents that the company complies with the U.S. Electronic Signature in Global and National Commerce Act of 2000 ("E-SIGN") regarding electronic signatures and transmissions. *Id.* at ¶ 11.

It is argued by defendant, without contradiction, that according to HelloSign's audit data, Bynum reviewed the Agreement on three separate days—October 9, 14, and 15, 2014—prior to signing it. *See id.* at Ex. A, Audit Trail. After signing the Agreement and submitting her application, plaintiff received a copy of her completed application, including the signed Agreement. *Id.* at ¶ 13. She then began performing Personal Shopper services for Instacart. *Id.* at ¶ 14.

### 3. Parties' Obligations

According to the Agreement, a Personal Shopper is engaged by Instacart to perform "[s]hopping and delivery services" for its customers. *Id.* at Ex. A, § 1 and Ex. A. Personal Shoppers are paid by Instacart pursuant to the following fee schedule:

> For each "batch" of orders picked, contractor will receive the greater of $5 (five dollars) per batch or 50 (fifty) cents per item picked. Contractor will receive an additional commission of $5 per order delivered. Contractor will also receive an additional twenty five cents per batch if he or she wears an "Instacart" shirt while picking the batch and delivering all orders comprised of that batch. The contractor will be charged $0.25/batch for use of the app.

*Id.* at Ex. A, § 2 and Ex. A.  Under section 2 of the Agreement, Personal Shoppers "shall be responsible for all expenses incurred or necessary in the performance of [shopping and delivery services], including but not limited to telephone, mailing, and travel expenses."  *Id.* at Ex. A, § 2.

### 4. Arbitration Agreement

The Agreement contains a section entitled "DISPUTE RESOLUTION."  *See id.* at Ex. A, § 7.  Section 7.1 states:

> Following the full opportunity to discuss and negotiate over this dispute resolution procedure, the Parties agree that to the fullest extent permitted by law, any controversy, dispute or claim arising out of or relating to the Services performed by the Contractor, this Agreement, the breach, termination, interpretation, enforcement, validity, scope and applicability of any such agreement, or any allegations of discrimination or harassment on any basis under federal, state, or local law, which could otherwise be heard before any court of competent jurisdiction (a "Dispute"), shall be submitted to and determined exclusively by binding arbitration.  The Parties agree that a Dispute arising under any law that requires resort to an administrative agency may be brought before such agency as permitted by law, and that after exhaustion of administrative remedies, the Parties must pursue such Dispute through this binding arbitration procedure to the fullest extent permitted by law.

*Id.* at Ex. A, § 7.1.

The Agreement provides that arbitration shall be administered by JAMS at its San Francisco office "pursuant to its Employment Arbitration Rules and Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness . . . that are in effect when arbitration is demanded."  *See id.* at Ex. A, § 7.2 and Ex. B.  The Agreement requires the parties to "equally advance all of the arbitrator's expenses and fees" and allows the arbitrator to "award fees and costs to the prevailing party."  *Id.* at Ex. A, § 7.3.  Pursuant to section 7.2, "[i]n the event of any conflict between the [JAMS] Rules and this Agreement, this Agreement shall apply."  *Id.* at Ex. A, § 7.2.

According to section 7.4 of the Agreement, California substantive law applies to the arbitration proceedings as well as to a review of any award, except where federal law controls:

> The Parties agree that the enforceability of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 2), and acknowledge that Company's business and the nature of Contractor's services involve interstate commerce. The arbitrator shall apply California substantive law to the proceeding, except for any claim to which Federal substantive law would apply. **The Parties each expressly waive the right to a jury trial and agree that the arbitrator's award shall be final and binding on the Parties**. Any Action to review the arbitration award for legal error or to have it confirmed, corrected or vacated shall be decided pursuant to California law and shall be filed and maintained in a California state court of competent jurisdiction.

*Id.* at Ex. A, § 7.4 (bold type in original).

### 5. Severability

A severability provision is included:

> If any provision of this Agreement, or any part thereof, be declared or determined by any arbitrator or court to be illegal, invalid or unenforceable and are therefore stricken or deemed waived, the remainder of the provision and the Agreement shall nonetheless remain binding in effect, and shall be interpreted in a way to achieve the goals or intent of the stricken or waived provisions to the extent such interpretation is consistent with applicable law.

*Id.* at Ex. A, § 10.

### 6. Governing Law

Under section 13, the Agreement is to be construed in accordance with California state law.

*Id.* at Ex. A, § 13.

### C. Defendant's Motion to Compel Arbitration

Defendant contends that the parties entered into a valid arbitration agreement under the FAA and that the present dispute falls within its scope. According to defendant, because every cause of action in plaintiff's complaint arises out of, or relates to, her activities as a Personal

Shopper, plaintiff breached the arbitration agreement by initiating the instant suit. *See* Def.'s Mem., at 6-7. Defendant seeks an order: (1) compelling arbitration of plaintiff's claims; (2) dismissing or staying the present action pending completion of arbitration; and (3) staying all further proceedings pending resolution of defendant's motion to compel arbitration. *Id.* at 8.

Plaintiff argues that Congress did not intend for FLSA claims to be arbitrable and more information is needed to determine whether the parties entered into a valid electronic arbitration agreement. *See* Pl.'s Mem., at 3-10. Defendant opposes plaintiff's request for additional discovery, contending that Ms. Bynum "has failed to offer any facts or evidence . . . that the agreement is invalid or that she did not intend to be bound by it." Def.'s Reply in Supp. of Mot. to Compel Arbitration, Jan. 19, 2016, ECF No. 31 ("Def.'s Reply Mem."), at 10.

## III.  Law

### A.    Federal Arbitration Act

The question of whether the parties entered into a valid arbitration agreement is governed by the FAA. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004); *Cobarruviaz v. Maplebear, Inc.*, No. 15-CV-697, 2015 WL 6694112 (N. D. Cal., Nov. 3, 2015) (reviewing the enforceability of an identical arbitration agreement with reference to the FAA). Chapter two of the FAA provides for enforceability:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). The Supreme Court has interpreted the FAA broadly, finding a "liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) ("The Arbitration Act thus establishes a 'federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.'") (internal citations omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration.").

Arbitration "is a matter of contract." *AT&T Mobility LLC*, 563 U.S. at 339 (citing *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). When enforcing an arbitration agreement, "as with any other contract, the parties' intentions control." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks and citations omitted). Courts may only compel arbitration of "those disputes . . . that the parties have agreed to submit" to arbitration. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (internal quotation marks and citations omitted) (alteration in original). If the parties intended to arbitrate a dispute, courts are generally required to "enforce [such] agreements . . . according to

their terms." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012); *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 177 (2d Cir. 2015).

If a court is satisfied that a matter is arbitrable under an arbitration agreement, section 3 of the FAA provides for a stay of legal proceedings. 9 U.S.C. § 3; *see also Genesco*, 815 F.2d at 844. Pursuant to section 4 of the FAA, a court is to compel arbitration if there has been a "failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4; *Sinnett*, 319 F. Supp. 2d at 443 (quoting *Genesco*, 815 F.2d at 844).

In order to determine whether proceedings should be stayed or dismissed in favor of arbitration, a court must assess: "(1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Id.*; *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

### B.     Valid Arbitration Agreement

Section two of the FAA allows courts to deny enforcement of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Whether a valid arbitration agreement exists is a question of state contract law. *Sinnett*, 319 F. Supp. 2d at 443-44 ("[W]hen determining whether a contract to arbitrate has been established for the purposes of the FAA, federal courts should apply 'ordinary state-law principles that govern the formation of contracts' to decide 'whether the parties agreed to arbitrate a certain matter.'") (quoting *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law.")

(citations omitted); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law.").

According to general principles of contract law, "a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." *Genesco*, 815 F.2d at 845. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *Cobarruviaz*, 2015 WL 6694112 at *6 ("Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof.") (internal quotation marks and citations omitted).

The Agreement in the instant case provides that it shall be construed in accordance with California state law. It is enforceable unless a contract defense generally available under California law applies, including unconscionability. *Cobarruviaz*, 2015 WL 6694112 at *6 ("[I]n California, the courts may refuse to enforce an arbitration agreement if [it] is unconscionable, as unconscionability is a general contract defense.") (citations omitted).

*Cobarruviaz* involved the same defendant as the present case, the same arbitration agreement, California law as operative, and a similar factual pattern. Its basic analysis is adopted in the instant case.

Pursuant to § 1670.5(a) of California's Civil Code:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5(a) (West).

A contract provision is unconscionable if it was both procedurally and substantively unconscionable when made: "the core concern . . . is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Cobarruviaz*, 2015 WL 6694112 at *6 (citing *Sonic–Calabasas A, Inc. v. Moreno*, 311 P.3d 184 (Cal. 2013)) (internal quotation marks omitted); *cf. Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 391 (E.D.N.Y. 2015) (To characterize a term as unconscionable "requires a showing that the contract was both procedurally and substantively unconscionable when made—*i.e.*, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.") (internal quotation marks and citations omitted); 8 Williston on Contracts § 18:9 (4th ed. 2015) (same).

## C.    Arbitrability of Statutory Claims

The federal policy favoring arbitration extends to the enforcement of agreements to arbitrate claims founded on statutory rights. *See Shearson/Am. Exp., Inc.*, 482 U.S. at 226 ("This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). "Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that would provide grounds for the revocation of any contract, the Arbitration Act provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Shearson/Am. Exp., Inc.*, 482 U.S. at 226 (internal quotation marks and citations omitted).

The enforceability mandate of the FAA may be overridden by a showing of a contrary congressional command—a party opposing arbitration bears the burden of demonstrating that

Congress intended to preclude a waiver of judicial remedies for the particular statutory rights at issue. *Id*.; *Gilmer*, 500 U.S. at 35 (concluding that Congress did not intend to preclude arbitration of claims arising under the Age Discrimination in Employment Act; age discrimination claim was subject to compulsory arbitration pursuant to arbitration agreement).

## IV. Application of Law to Facts

### A. Valid Arbitration Agreement

#### 1. Consent to Arbitrate

Defendant contends that the parties entered into a valid arbitration agreement under the FAA and the present dispute falls within its scope. According to defendant, plaintiff reviewed and signed the Agreement, which included a binding arbitration clause. The available audit trail shows that she reviewed the Agreement on multiple dates. She then electronically signed the Agreement using HelloSign; her signature is binding and enforceable. *See* Def.'s Mem., at 11-12.

In her opposition to defendant's motion to compel, plaintiff has not challenged the validity of the arbitration agreement. Instead, she has requested more time and additional discovery to determine whether there was a valid "meeting of the minds," because the Agreement was between "[p]laintiff and a computer." Pl.'s Mem., at 9. Although the Agreement references the parties' "full opportunity to discuss and negotiate over th[e] dispute resolution procedure," plaintiff states that "it seems [the Agreement] was nothing more than an adhesion 'contract' without any negotiation over its terms." Pl.'s Mem., at 10; *see also* Wake Decl., at Ex. A, § 7. She also indicates that there are "no sworn statements, explanations, or other discovery from Hellosign" regarding whether its processes comply with the relevant electronic signature requirements and argues that "there is no reliable evidence that" plaintiff actually received the JAMS rules and conditions. Pl.'s Mem., at 9.

While the contract signed by plaintiff appears to be one of adhesion—it was offered on a take-it-or-leave-it basis and, despite language suggesting otherwise, there does not appear to have been any actual opportunity to discuss or negotiate its terms—plaintiff did have a full opportunity to review its contents. Ms. Bynum testified that the full employment contract was sent to her personal email address and that she "probably read most of it," although she did not presently "recall the arbitration section." Hr'g Tr., at 15:13-21. The arbitration clause was included in the employment contract. In order to get to the signature page, plaintiff had to scroll through the entire contract, including the arbitration clause:

> MS. WAKE: [The contract] is a multipage document, so they would have to go through the document and the arbitration clause is within the document. It's not on the first page.
>
> THE COURT: Can you skip the agreement and go to signing?
>
> MS. WAKE: No, you have to scroll down through the entire agreement to get to the signature page.
>
> THE COURT: Is that right?
>
> THE PLAINTIFF: Like I said, I don't recall exactly.
>
> THE COURT: But you don't disagree that you had the opportunity and had to scroll down to get to the signing page?
>
> THE PLAINTIFF: Well, you can, in any document, you can scroll through the entire document and just skip whatever you want if you choose to.
>
> […]
>
> THE COURT: But there was no shortcut, you had to scroll through?
>
> THE PLAINTIFF: I believe so, yeah.

*Id*. at 18:8-19:1; *contra Berkson*, 97 F. Supp. 3d at 403-04 (finding that plaintiff Berkson was not aware of the terms he was binding himself to when the relevant terms of use were made available through a hyperlink near a sign-in button; Gogo did not have a practice of emailing or mailing the contents of the "terms of use" to its customers and plaintiff Berkson never had a hard copy in his possession to refer to).

Plaintiff does not claim that there was any language or educational barrier that stopped her from understanding the contract. *See* Hr'g Tr., at 19:5-10. After having the opportunity to read and review it, plaintiff signed the Agreement. Absent any showing of fraud, duress, or other wrongful conduct, the Agreement, including its arbitration clause, is valid and binding on the parties.

### 2. Venue and Unconscionability

Although plaintiff is a resident of Queens, New York and performed services for defendant within New York, the arbitration agreement provides that arbitration shall be conducted at the JAMS offices in San Francisco, California. *See* Wake Decl., at Ex. A, § 7.2. It also provides that the parties are to equally advance fees and costs and allows the arbitrator to award legal fees and costs to the prevailing party. *Id.* at Ex. A, § 7.3. A worker such as plaintiff would be forced out of the game by fear of a financial cost that her opponent could easily absorb.

While plaintiff has not claimed—as she might have under *Cobarruviaz*—that the cost of arbitration would render the arbitration agreement invalid, she has argued that the provisions relating to venue and fees would force her to "pay more to arbitrate her claims than her claims are worth." Pl.'s Mem., at 4.

#### a) Venue

Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to an appropriate venue not unduly burdensome to the parties and witnesses. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). To the extent that the arbitration clause provides for arbitration in San Francisco—a city never visited by plaintiff and thousands of miles away from

where she resides and where she performed services for defendant pursuant to the Agreement—it violates applicable federal policy in regards to venue and is invalid. The provision is particularly inappropriate in the present case since the defendant and JAMS are present in New York.

At the February 8, 2016 hearing, the parties stipulated that the provision relating to choice of venue is severable. They agreed that venue is appropriate in New York rather than in California. *See* Hr'g Tr., at 5:22-24, 6:6-10. The contract clause requiring arbitration to be carried out in San Francisco is, accordingly, stricken, in light of the parties' stipulation. If an arbitration goes forward, it is to be carried out by JAMS in New York where it has an office. *See id*.

### b) Unconscionability

The provisions requiring the parties to equally advance fees and allowing the arbitrator to award legal fees and costs to the prevailing party are unconscionable under applicable California law. The contract provides that California law governs. *See* Wake Decl., at Ex. A, § 13. Identical clauses were deemed unconscionable and severed by the court in *Cobarruviaz*. *See Cobarruviaz*, 2015 WL 6694112 at *7-8. There, the Northern District of California considered an arbitration agreement like the one presently at issue, except that venue was not a concern in that case since the plaintiff brought the suit in San Francisco. *See id*. at *7 (finding that the forum selection clause requiring arbitration in San Francisco was not substantively unconscionable and noting that "[w]hile a different calculus should arguably apply to an employment dispute . . . wherein an employee may claim undue burden resulting from a distant forum, here, [p]laintiffs have chosen to file the instant lawsuit in San Francisco.").

The arbitration agreement's fee-related clauses conflict with the otherwise applicable JAMS Minimum Standards which provide, in relevant part:

> An employee's access to arbitration must not be precluded by the
> employee's inability to pay any costs or by the location of the

> arbitration. The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.

Wake Decl., at Ex. A, Ex. B, Minimum Standard 6. These Minimum Standards "apply to arbitrations based on pre-dispute agreements that are required as a condition of employment." *Id*. at Ex. A, Ex. B. They provide that "JAMS will administer mandatory arbitrations in employment cases *only if* the arbitration provision complies with JAMS Minimum Standards." *Id.* (emphasis added). Yet, section 7.2 of the arbitration agreement in the instant case provides that "[i]n the event of any conflict between the [JAMS] Rules and this Agreement, this Agreement shall apply." *Id*. at Ex. A, § 7.2.

In *Cobarruviaz*—a similar FLSA suit brought against the same defendant as in the instant case—the district court for the Northern District of California ordered defendant to file an arbitration demand with JAMS to determine whether JAMS would be willing to accept the arbitration. JAMS replied that "the arbitration agreement as written *does not comply* with the Minimum Standards. Therefore, JAMS has determined that it *will administer the cases only if the parties, by agreement or waiver, amend the arbitration agreement* to comply with the Minimum Standards." *Cobarruviaz*, 2015 WL 6694112 at *3 (emphasis added). In that case, the plaintiffs did not agree to modify or waive the offending contract terms. *Id*. The court severed the conflicting fee-related provisions as unconscionable and only then did it compel the parties to arbitrate. *See id*. at *8 ("Both the FAA and California law favor severance when the contract is not 'permeated' with unconscionability. No such permeation exists here. Moreover, there is a severance clause in the Agreements. The offending provisions may easily be grammatically severed without reforming the Agreements.").

17

In the instant case, the parties agreed to strike the two conflicting fee-related provisions:

> MR. BERKOWITZ:  I would certainly agree . . . Instacart intends to pay the arbitrator's fees, and I certainly agree with the striking of the fee splitting provision.  The prevailing party provision, we have no objection to it being struck.
>
> THE COURT:  All right.  So those they'll strike.  Will you agree to striking those two, if I order arbitration?
>
> MR. HASSAN:  Yeah, I believe they're invalid, Your Honor.  They should be stricken.
>
> THE COURT:  All right.  So those are stricken by stipulation.

Hr'g Tr., at 8:2-14.

Without the objectionable venue, fee splitting and fee sharing clauses, the arbitration agreement is valid and enforceable.

## B.      Arbitrability of FLSA Claims

Plaintiff in the present case contends that FLSA claims are non-arbitrable as a matter of law.  She argues that: (1) Congress intended FLSA claims to be non-arbitrable; and (2) FLSA claims are not subject to arbitration under the decision of the Court of Appeals for the Second Circuit in *Cheeks v. Freeport Pancake House Inc.*, 796 F.3d 199 (2d Cir. 2015).  *See* Pl.'s Mem., at 3-9.  For the reasons stated below, plaintiff's claims are without merit.

### 1.  FLSA Claims are Arbitrable

Plaintiff rests on the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) in support of her argument that FLSA claims are not arbitrable.  In that case, the Court held that petitioners' minimum wage claims under the FLSA were not barred by the prior submission of the petitioners' grievances to a joint committee pursuant to the provisions of a collective bargaining agreement.  The Court differentiated between collective rights arising

under a collective bargaining agreement and individual rights under a federal statute. *See Barrentine*, 450 U.S. at 737-46.

*Barrentine* has been distinguished from cases involving the arbitrability of individual statutory claims. *See, e.g.*, *Gilmer*, 500 U.S. 20 at 33-35. *First*, *Barrentine* was not decided under the FAA so the statute's "liberal policy favoring arbitration" was not at issue. *See id.* at 35. *Second*, *Barrentine* involved arbitration in the context of a collective bargaining agreement, where the claimants were represented by their unions; the relevant concern was the tension between collective representation and individual statutory rights. *Id.* The Court did not rule on whether individual FLSA claims could be arbitrated pursuant to a private agreement between an individual employee and employer.

Repeatedly it has been found that individual agreements to arbitrate FLSA claims are enforceable. For example, in *Ciago v. Ameriquest Mortgage Co.* the District Court for the Southern District of New York explained:

> Plaintiff argues that the Arbitration Agreement is invalid because "an employee cannot be held to have waived a judicial forum as guaranteed by the FLSA." Plaintiff does not, however, point to anything in the text of the FLSA that indicates Congress intended to preclude compulsory arbitration of FLSA claims nor does she establish that there is an "'inherent conflict' between arbitration and the" policies underlying the FLSA. In *Gilmer* the Supreme Court held that claims under the Age Discrimination and Employment Act ("ADEA") may be subject to compulsory arbitration. . . . [B]ecause of the similar remedial purpose and enforcement mechanisms shared by the ADEA and FLSA, the reasoning in *Gilmer* dictates that claims under the FLSA may also be subject to compulsory arbitration provisions.

> Plaintiff cites *Barrentine v. Arkansas–Best Freight*, 450 U.S. 728, 101 S. Ct. 1437, 67 L.Ed.2d 641 (1981), and *Tran v. Tran,* 54 F.3d 115 (2d Cir. 1995), in support of her contention that FLSA claims are nonarbitrable. In these cases, the Supreme Court and the Second Circuit held that an arbitration provision in a collective bargaining agreement did not preclude an individual union member from bringing a claim against his employer under the FLSA.

> *The present case involves an individual agreement to arbitrate, not a provision within a collective bargaining agreement*; it is, therefore, distinguishable from *Barrentine* and *Tran* because different prudential considerations apply to collective bargaining. Specifically, the Court in *Barrentine* appeared concerned with the fact that the union might not pursue the individual member's FLSA claims through the arbitration process for strategic reasons. This consideration is simply not applicable here. Accordingly, we conclude that *Congress has not evinced an intention to preclude arbitration of FLSA claims.*

*Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003) (citations omitted; emphasis added); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (distinguishing *Barrentine* in a case involving an individual agreement to arbitrate because *Barrentine* "was limited to the case of collective-bargaining arbitration and was thus rooted in substantive concerns that simply do not apply" out of the collective bargaining context); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (finding that an employee can waive his or her ability to proceed collectively under the FLSA in an arbitration agreement); *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 824 (8th Cir. 2003) (compelling arbitration of FLSA claims); *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71 (S.D.N.Y. 2015) (same); *LaVoice v. UBS Fin. Servs., Inc.*, No. 11-CV-2308, 2012 WL 124590, at *9 (S.D.N.Y. Jan. 13, 2012) (same); *Steele v. L.F. Rothschild & Co., Inc.*, 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (staying FLSA suit pending arbitration).

*Sutherland* is the leading Second Circuit case addressing the arbitrability of FLSA claims. Both sides rely upon it. In that case the question was whether the FLSA barred the waiver of collective action through individual agreements to arbitrate; plaintiff argued that enforcing the arbitration provision in her employment contract would prevent her from "effectively vindicating" her rights under the FLSA and NYLL, because she would not be allowed to pursue the claims collectively through litigation. *See Sutherland*, 726 F.3d at 294-295. The Court of Appeals for the Second Circuit reiterated the liberal federal policy in favor of arbitration. *Id.* at 295. It found,

following the Supreme Court's decision in *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013), that the plaintiff's argument "that proceeding individually in arbitration would be 'prohibitively expensive' is not a sufficient basis to invalidate the class-action waiver provision at issue." *Id*. at 299.

The decisions of the Supreme Court, as well as of courts both within and outside this circuit, indicate that valid arbitration agreements subjecting individual FLSA claims to arbitration must be enforced in accordance with the FAA. The Supreme Court has declared: "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc.*, 473 U.S. 614, 628 (1985)); *see also Circuit City Stores, Inc.*, 532 U.S. at 123. Where the arbitration procedure provided would be unfair to the worker, the court may, as in this case, take into account protective equities and law due to the plaintiff under the FLSA.

### 2. Impact of *Cheeks v. Freeport Pancake House*

Plaintiff argues that the decision of the Court of Appeals for the Second Circuit in *Cheeks v. Freeport Pankcake House Inc*.—holding that FLSA claims cannot be settled without the approval of a court or the United States Department of Labor—lends support to its claim that FLSA claims are not arbitrable because: (1) an arbitrator is not obliged to protect the "public's interest in FLSA compliance" but is "only obligated to serve the private interests of the parties based on their arbitration agreement;" (2) "the costs of arbitration offset[] and therefore result[] in waiver of Plaintiff's FLSA protected wages;" and (3) arbitration of FLSA claims should not be allowed in this case "because of the confidentiality of the arbitration proceedings under JAMS' rules." Pl.'s Mem., at 7-8.

In *Cheeks*, the Second Circuit addressed the question in an interlocutory appeal of whether parties may settle FLSA claims with prejudice without court approval or Department of Labor supervision. *Cheeks*, 796 F.3d at 201. The court concluded that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*. at 206. No question regarding the arbitrability of FLSA claims was raised. Plaintiff's reference to the Second Circuit's decision in *Cheeks* is therefore misplaced. That decision does not bear on the arbitrability of FLSA claims.

### C.    Scope of Arbitration Agreement

The remaining question to be decided is whether plaintiff's claims fall within the scope of the arbitration agreement. According to defendant, all of plaintiff's causes of action—misclassification as a non-employee and failure to pay overtime wages under the FLSA and NYLL—arise out of, or relate to, the "Services performed by the Contractor" and are covered by the Agreement's arbitration clause. "Services" is defined in the Agreement as "Shopping and delivery services for customers of Company." Wake Decl., at Ex. A, § 1 and Ex. A.

Plaintiff cannot argue that her FLSA claims do not fall within the scope of the Agreement's arbitration clause. The arbitration agreement includes broad language, stating that "the Parties agree that to the fullest extent permitted by law, any controversy, dispute, or claim arising out of or relating to the Services performed by the Contractors . . . shall be submitted to arbitration." *Id*. at Ex. A, § 7.1.

The present dispute centers on whether plaintiff should be deemed an employee of defendant rather than an independent contractor, and whether she worked overtime hours and is entitled to overtime wages under the FLSA and NYLL. The dispute "arises out of" or relates to the services performed by plaintiff; it requires inquiring into the nature of plaintiff's employment

and whether she was afforded proper compensation. Plaintiff's claims fall within the scope of the arbitration agreement.

## V. Conclusion

Plaintiff had a reasonable opportunity to examine and understand the arbitration clause included in the employment contract that she reviewed and signed. The arbitration agreement's provisions on venue, fee sharing, and fee splitting are not enforceable and are severed pursuant to the parties' stipulation. Without the objectionable clauses, the arbitration agreement is valid and enforceable. There is no merit to plaintiff's claim that FLSA claims are *per se* non-arbitrable, and the present dispute falls within the broad language of the arbitration agreement.

Defendant's motion to compel arbitration is granted. There appears to be no reason for new discovery on the issue of arbitrability. The case is stayed pending arbitration pursuant to section 3 of the FAA.

Defendant shall promptly file an arbitration demand with JAMS in New York. If JAMS is unwilling to accept the arbitration in New York for any reason, either party shall by letter notify the court. The court will then set a trial date. The parties and JAMS are requested to take appropriate prompt steps to determine whether the arbitration can go forward.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: February 12, 2016
Brooklyn, New York