1

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF NEW YORK
2

3    MELODY BYNUM,                    ) Civil Action
                                      ) No. 15-6263 (JBW)
4                  Plaintiff,         )
                                      ) MOTION HEARING
5    vs.                              )
                                      ) Brooklyn, New York
6    MAPLEBEAR INC.,                  ) Date:  September 8, 2016
     d/b/a INSTACART,                 ) Time:  11:00 a.m.
7                                     )
                   Defendant.         )
8                                     )
    _____
9
                TRANSCRIPT OF MOTION HEARING
10                    HELD BEFORE
         THE HONORABLE JUDGE JACK B. WEINSTEIN
11              UNITED STATES DISTRICT JUDGE
    _____
12
                   A P P E A R A N C E S
13

14  For the Plaintiff:      Abdul Karim Hassan, Esq.

15
    For the Defendant:      Benjamin W. Berkowitz, Esq.
16                          Alice K. Jump, Esq.

17
    Also Present:
18  Melody Bynum, Plaintiff
    Heather Wake, via telephonic communications
19  Rebecca Punak, via telephonic communications

20
    Proceedings reported by machine shorthand, transcript produced
21  by computer-aided transcription.
    _____
22
    Court Reporter:         Annette M. Montalvo, CSR, RDR, CRR
23                          Official Court Reporter
                            United States Courthouse, Room N330
24                          225 Cadman Plaza East
                            Brooklyn, New York  11201
25                          718-804-2711

2

1          (WHEREUPON, commencing at 10:53 a.m., the following

2     proceedings were had in open court, to wit:)

3          THE COURTROOM DEPUTY:  Civil cause for motion

4     hearing.  *Bynum v. Maplebear Inc.*  15-CV-6263.

5          Counsel, note your appearances, please.

6          For the plaintiff?

7          MR. HASSAN:  Your Honor, Mr. Abdul Hassan for

8     plaintiff, Ms. Bynum.  Good morning.  Plaintiff Ms. Bynum is

9     also present.

10         THE COURT:  Good morning.  Swear the plaintiff,

11    please.

12         THE COURTROOM DEPUTY:  Please stand and raise your

13    right hand.

14         (WHEREUPON, the plaintiff was duly sworn.)

15         THE COURTROOM DEPUTY:  State your name, please.

16         THE WITNESS:  Melanie Bynum.

17         THE COURTROOM DEPUTY:  Thank you.

18         For the defendant?

19         MR. BERKOWITZ:  Good morning, Your Honor.  Ben

20    Berkowitz of Keker & Van Nest here for the defendant,

21    Maplebear, doing business as Instacart.

22         MS. JUMP:  Alice Jump, Reavis Parent Lehrer, local

23    counsel for the defendant.

24         THE COURT:  Good morning, everyone.

25         MR. BERKOWITZ:  Your Honor, if I can add, we do have

3

1   a representative of the client available by telephone, as the

2   Court ordered, if the Court would like to dial them in.

3           THE COURT:  Do you want to put them on?

4           THE COURTROOM DEPUTY:  Sure.

5           MR. BERKOWITZ:  Heather Wake.  It's the same witness

6   who appeared in person last time, Your Honor.

7           (WHEREUPON, Ms. Wake and Ms. Punak entered the

8   proceedings via telephonic communications.)

9           MS. WAKE:  Hello?

10          THE COURTROOM DEPUTY:  Ms. Wake?

11          MS. WAKE:  Yes, Ms. Wake here.

12          THE COURTROOM DEPUTY:  All right.  Judge Weinstein

13  is ready for the conference call.

14          Give your name, please.

15          MS. WAKE:  Heather Wake.

16          THE COURTROOM DEPUTY:  Spell your last name.

17          MS. WAKE:  W-a-k-e.

18          THE COURTROOM DEPUTY:  Okay.

19          MR. BERKOWITZ:  Your Honor, I believe Rebecca Punak,

20  who is in-house counsel for Instacart, is also on the line.

21          THE COURT:  Swear the defendant representative,

22  please.  What's her name?

23          MR. BERKOWITZ:  The representative is Heather Wake,

24  which is W-a-k-e.  And I believe she's accompanied by one of

25  Instacart's in-house attorneys, who is Rebecca Punak,

4

1   P-u-n-a-k.

2          (WHEREUPON, Ms. Wake was duly sworn.)

3          THE COURT:  All right.  We have a mandate from the

4   Court of Appeals, July 13, 2016.  The appeal was dismissed,

5   and that appeal, I take it, was from this February order,

6   correct?

7          MR. HASSAN:  Yes, Your Honor.  February 12.

8          THE COURT:  Yes.  And then the Court of Appeals said

9   it is not final, so you can't appeal it, it is interlocutory.

10  And it made the following suggestion:  The district court

11  should determine in the first instance whether the appellant's

12  waiver of the right to arbitrate entitles the appellant to

13  terminate the existing stay of dismissal, or, two, whether

14  certification under 28 USC Section 1292(b) is appropriate.

15  And that's the certification by the district court allowing an

16  interlocutory order to go up, again, subject to the Court of

17  Appeals taking the matter.  And that's all they do.  So they

18  dismissed it and made a few suggestions.

19          I don't know what you mean by, speaking for the

20  plaintiff, by you're waiving the right to arbitration.  Could

21  you explain that to me?

22          MR. HASSAN:  Very simply, Your Honor.  The plaintiff

23  made a decision that she does not want to arbitrate because we

24  still believe there's significant risk involved in

25  arbitration, so the next step in the case would have been

5

1 arbitration, and in the absence of that next step, there's

2 nothing else to do in the court.

3        THE COURT:  Madam, is that what you want to do, you

4 want to waive your right to arbitration?

5        PLAINTIFF BYNUM:  That is correct, yes.

6        THE COURT:  On the advice of counsel?

7        PLAINTIFF BYNUM:  That is correct.

8        THE COURT:  Do you know that that will lead to

9 dismissal of your case on the merits, which means you can't

10 bring the case again; do you understand that?

11        PLAINTIFF BYNUM:  I do, yes.  It was explained.

12        THE COURT:  And you advised her of that?

13        MR. HASSAN:  Yes, Your Honor.  We went through this

14 in great detail.

15        THE COURT:  So when you say you're waiving

16 arbitration, I take it you mean you refuse to go to

17 arbitration; is that right?

18        PLAINTIFF BYNUM:  That is correct, yes.

19        THE COURT:  I see no other basis than to dismiss the

20 case.

21        MR. BERKOWITZ:  Your Honor, if we could be heard on

22 that?

23        THE COURT:  On the merits, yes.

24        MR. BERKOWITZ:  On the question of whether the case

25 should be dismissed?

6

1          THE COURT:  Yes.

2          MR. BERKOWITZ:  Well, Your Honor, I think, really,

3     the Second Circuit's decision in *Katz* speaks to the issue of

4     whether a district court has the discretion to dismiss a case

5     rather than -- once a stay has been entered under section 3.

6     So section 3, as the Court knows and as the Court described in

7     its opinion, requires a mandatory stay by the district court.

8     The Second Circuit in *Katz* has interpreted that mandatory

9     language quite strictly.  So in *Katz* --

10         THE COURT:  So I've issued a stay.  That's where we

11    are.

12         MR. BERKOWITZ:  Exactly.

13         THE COURT:  I followed the court.  But I have issued

14    the stay so that you could proceed to arbitration in the case.

15    You intended to proceed to arbitration; is that correct?

16         MR. BERKOWITZ:  That's correct, Your Honor.  We have

17    filed an arbitration.

18         THE COURT:  You actually filed an arbitration.

19         MR. BERKOWITZ:  That's correct.

20         THE COURT:  Okay.  Give me a letter to that effect,

21    to the filing.

22         MR. BERKOWITZ:  Yes, Your Honor.

23         THE COURT:  And so what do you want to do now?  They

24    refuse to go to arbitration.

25         MR. BERKOWITZ:  It seems to us, Your Honor, that the

7

1  arbitration ought to be, you know, decided on the merits.
2  Whether that's decided because of, you know, failure to
3  prosecute or otherwise, that's really a decision for the
4  arbitrator.  In other words, the case has now been -- the case
5  has now been compelled to arbitration by this court.  You
6  know, jurisdiction over any final decision on the merits of
7  this case is in front of JAMS, and when -- if Ms. Bynum, you
8  know, decides to fail to prosecute the case in JAMS, as she --
9        THE COURT:  As she already told me she decided that.
10        MR. BERKOWITZ:  As she says she may do.  The
11  decision of how it --
12        THE COURT:  She didn't say "may."  She said she does
13  now do.
14        MR. BERKOWITZ:  It seems to me that that is an issue
15  that ought to be, you know, addressed in the first instance by
16  JAMS, by the arbitrator.
17        THE COURT:  I don't understand what they have to
18  address.  You have moved for arbitration; she refuses to go
19  ahead.  The arbitrator can't do anything on your motion
20  without her being present.
21        MR. BERKOWITZ:  Well, I think an arbitrator, just as
22  if a litigant refuses --
23        THE COURT:  What would the arbitrator be able to do?
24        MR. BERKOWITZ:  Just --
25        THE COURT:  You come in and say, "I want to

1    arbitrate this dispute."  She says, "I have no form of a

2    dispute."  Right?  "I don't want to arbitrate."

3              Isn't that your position?

4              PLAINTIFF BYNUM:  Correct, it is.

5              MR. BERKOWITZ:  I think it is -- I don't think it is

6    any -- I don't think it is any different than if we were in a

7    court, Your Honor.  If the plaintiff in a court refused to

8    proceed with the litigation, there would be a dismissal

9    entered on that basis.  I think the same result will occur in

10   arbitration.

11             THE COURT:  But I know that's what the result is.

12   Why put us through a further delay and perhaps require the

13   plaintiff to spend money and time on this?

14             MR. BERKOWITZ:  Well, I think, Your Honor, I think

15   the different -- I think the difference -- I mean, I think it

16   goes down to what is considered, you know, a final judgment

17   under the FAA.

18             THE COURT:  Well, if I dismiss it, then it is final.

19             MR. BERKOWITZ:  I think -- well, I guess my comment

20   on that would be under the *Katz* decision, Your Honor, I don't

21   believe -- I don't believe the Court has the discretion to

22   dismiss the case under *Katz*.

23             THE COURT:  Maybe that's what we ought to have the

24   Court of Appeals tell us.  It seems to me a waste of arbitral

25   resources, court resources, and the plaintiff's resources, to

1   allow the arbitrator to do what the arbitrator has to do,

2   dismiss.

3          MR. BERKOWITZ:  If I could speak to that efficiency

4   issue.  There is a reason why I think this process is intended

5   to work this way.

6          THE COURT:  Why?

7          MR. BERKOWITZ:  Under -- you know, one of the

8   reasons Congress passed the FAA was to permit parties by

9   contract to agree to speedier, faster, more efficient form of

10  litigation.  By permitting effectively an interlocutory appeal

11  here, with not -- and keep in mind the plaintiff isn't waiving

12  her right to arbitrate --

13         THE COURT:  It is not interlocutory.  It is a final

14  dismissal of the action on the merits.  The defendant is not

15  going to move to re-open because I am not -- isn't that right?

16         PLAINTIFF BYNUM:  Correct.

17         MR. HASSAN:  True, Your Honor.  If we lose the

18  appeal, our claims are gone.

19         THE COURT:  The appeal?

20         MR. HASSAN:  If after you dismiss and we appeal, if

21  we lose that appeal, it is gone, we are out of luck.

22         MR. BERKOWITZ:  So the argument for efficiency under

23  the FAA is this case can be resolved fairly quickly in

24  arbitration.  If Ms. Bynum goes to arbitration and prevails --

25         THE COURT:  She is withdrawing her claim in this

1  case.  In effect, she's moving to dismiss this case; is that

2  right?

3           MR. HASSAN:  That's the effect, Your Honor, because

4  under *Slayton* you can decline further action, which

5  automatically converts the stay into a dismissal.

6           THE COURT:  She's refusing to go forward with this

7  case.

8           MR. BERKOWITZ:  I think that --

9           THE COURT:  Why should I retain jurisdiction when

10  the plaintiff's doesn't want to go forward?  And when the

11  plaintiff understands it is going to be a dismissal on the

12  merits?

13          MR. BERKOWITZ:  I think the difference between -- so

14  recognizing, I think, the difference between *Slayton*, *Slayton*

15  involves a decision -- did involve a decision on the merits.

16  It involved the dismissal of the claims, admittedly, with

17  leave to amend, and the party then declined to amend, which

18  did result in a final decision on the merits.

19          There's a distinction in -- as described in the

20  *Green Tree* case, US Supreme Court case, *Green Tree*, with

21  respect to a final decision on the merits -- with a final

22  decision for purposes of arbitration, and what the Supreme

23  Court says in *Green Tree* is that a -- where a stay has been

24  entered under section 3 as opposed to dismissal, that isn't a

25  final decision for purposes of arbitration.

1    THE COURT:  A stay.

2    MR. BERKOWITZ:  And what *Katz* says in the Second

3  Circuit is that a stay is mandatory, and that the district

4  court doesn't have discretion to dismiss.  And it is -- the

5  way that *Katz* -- the procedural posture of *Katz*, of course, is

6  on -- it was the cross -- on the cross-appeal from Verizon,

7  who was appealing the denial of its request to stay

8  proceedings.

9         And so it seems to us there are different appellate

10  rights -- I mean, there's an efficiency to having the case

11  fully litigated on the merits in the arbitral forum before

12  proceeding to appeal.  Now, that full litigation on the merits

13  may involve, as Ms. Bynum has said she's doing, a declination

14  or failure to prosecute, which will be part of the merits

15  appeal, but it doesn't strike us that you can conditionally

16  waive your right to proceed in a case.

17         In other words, unlike *Slayton*, unlike *Slayton* and

18  unlike cases involving -- other cases in the circuit that

19  involve decisions on the merits, here there's a decision

20  that's not on the merits of the claim and that's completely

21  conditional in terms of the dismissal.  So it is conditional

22  only with respect to --

23    THE COURT:  Not the position on the merits.  She

24  says, "I don't want to go forward with my claim at all, I am

25  withdrawing."

1          I mean, it's a basic principal, it seems to me, of

2    procedure.  Subject to such things as class actions, that the

3    plaintiff controls her case.  If she said -- we have them

4    every day.  I get a letter saying, plaintiff withdraws the

5    case.  Dismissed on the merits.  That goes on all the time.

6    They may withdraw it because they are settling or because they

7    are tired or exhausted or whatever.

8          MR. BERKOWITZ:  That does happen, Your Honor.  I

9    think the difference here is that the withdrawal is

10   conditional in a way that section 16 of the FAA --

11         THE COURT:  In what way is it conditional?

12         MR. BERKOWITZ:  She's saying I'm only withdrawing my

13   claims if the court -- first of all, if the court certifies

14   the appeal -- not certifies the appeal, but permits the appeal

15   under --

16         THE COURT:  I can't permit any appeal.  I will not

17   certify this case because it is clear to me that a

18   certification will not expedite decision in the case.  And the

19   Court of Appeals is not going to -- even if I were to certify

20   it -- is certainly not going to accept the certification.  So

21   a certification is denied.

22         So then we have a plaintiff who says "I don't want

23   to go forward with my case," for whatever reason.  That should

24   be the end of it.

25         MR. BERKOWITZ:  Well, in the typical case,

13

1    Your Honor --

2              THE COURT:  The arbitrator has not been appointed.

3              MR. BERKOWITZ:  That's correct.

4              MR. HASSAN:  The arbitration even hasn't begun.

5    They are waiting for Ms. Bynum to pay them money, and she's

6    not paying them any money.

7              THE COURT:  She's told me she doesn't want to go

8    forward with that case here or before the arbitration, right?

9              MR. HASSAN:  She would like to go forward with the

10   case here, but in light of the arbitration order, she can't.

11             THE COURT:  I see.  Okay.

12             MR. BERKOWITZ:  And that's what I mean by Your Honor

13   being conditional.  In other words, in a typical case, Your

14   Honor, a litigant has to litigate their case or dismiss it.

15   They don't get to conditionally dismiss it, particularly when

16   it comes to cases involving issues like FAA or issues like

17   class certification and so on.  And in the Second Circuit, we

18   do think the *Katz* decision -- in other words, Ms. Bynum is

19   entitled to dismiss her case.  What she's not entitled to do

20   under section 16 of the FAA is to manufacture finality for

21   purposes of arbitration.

22             THE COURT:  The only thing that worries me about a

23   dismissal on the merits is whether this attorney has acted

24   ethically, I don't say you haven't, by putting the client's

25   possible claim at risk for a decision on the merits, and

1  whether, as an ethical and as a procedural question, this

2  practice should be permitted.  But the client is sitting right

3  here next to him and she says -- you don't want to go forward

4  with the case, right?

5            PLAINTIFF BYNUM:  Correct.  Yes.

6            MR. HASSAN:  Your Honor, let me address that, since

7  you addressed it to me specifically.

8            This Court made a decision on arbitration, and we

9  don't even know what rules would apply in arbitration.  We

10  don't even know if this Court's striking of the fee shifting

11  is final.  They, I am sure, are going to argue at some later

12  point that that decision --

13            THE COURT:  That would all come up when I get a

14  final arbitrator's award.

15            MR. HASSAN:  No, the decision to review it, your

16  ability to review is restricted.  That's one of the points

17  we're making.

18            THE COURT:  Well, that's the nature of the --

19            MR. HASSAN:  It is to trap the plaintiff in

20  arbitration, and the plaintiff is facing a situation where for

21  $3,000, she can potentially be facing liability, 10, 15, 20

22  times that.  You have to be insane to do that.  And I told the

23  plaintiff, if I were her, I would never do it.  It doesn't

24  make any sense.

25            THE COURT:  Look.  I don't know what your ethical

1  position is and whether you are going through this procedural

2  posture that we now have before us in order to get a ruling

3  from the Court of Appeals on what's happened here.  I know you

4  specialize in these cases, as I understand.

5          MR. HASSAN:  Yes, Your Honor.  We don't want a

6  ruling --

7          THE COURT:  Excuse me.

8          You have exactly the same situation in the Southern

9  District, there's a remand.

10          MR. HASSAN:  Yes, Your Honor.

11          THE COURT:  What's happened in that case?

12          MR. HASSAN:  We haven't yet taken any action.  We

13  are going to file a motion.

14          THE COURT:  To what?

15          MR. HASSAN:  To do the same thing, to certify -- or

16  to dismiss in that case.

17          THE COURT:  Same as here?

18          MR. HASSAN:  Yes.  Her coworker.  Her coworker is in

19  the Southern District.

20          THE COURT:  She'll be in the same position that the

21  plaintiff is in here.

22          MR. HASSAN:  Yes.  And if we get to that case, we

23  might put that case on hold.  We have two other cases in which

24  we were not waiving -- I haven't advised the clients to waive

25  arbitration because the amount in controversy is very

16

1  significant.

2  So we're hoping that there could be some

3  certification.  But if there's any objective view of the

4  arbitration in this case, the provisions, you'll have to

5  commit malpractice to advise someone to risk $3,000 so they

6  can pay $100,000.  That is absolutely nonsense.

7  MR. BERKOWITZ:  Your Honor --

8  MR. HASSAN:  And let me say, Your Honor, we didn't

9  ask for this fight.  We filed a case here.  This case could

10  have been over already.  Instead, we have a motion we had

11  to -- we couldn't go to arbitration because this Court agreed

12  with us that a fee splitting provision was unconscionable.

13  You also agreed with us that a venue position was horrible.

14  So we have every justification for not only filing

15  it here, but for opposing the motion.  Then there is something

16  unhealthy that happens in arbitration cases, where the judge

17  gets together with the defendant --

18  THE COURT:  Excuse me.  I think what I have here is

19  an attorney that wants to use this case to establish a general

20  proposition in like cases that he has.  I am not interested in

21  that.

22  MR. HASSAN:  I don't want that.  Let us proceed in

23  court.  I'll give it up.

24  THE COURT:  You'll do what?

25  MR. HASSAN:  Your Honor, let us proceed in court.

1    We don't want any appeals.  We would like to proceed in court.

2         THE COURT:  You can't proceed in court because you

3    must arbitrate.

4         MR. HASSAN:  But it is not a fact, Your Honor.  We

5    respect the Court's decision, but don't blame us for having to

6    appeal when we didn't give the order -- we didn't file a

7    motion, we didn't make the order.  I mean, I like the fact

8    that we're going to appeal it, but we have a right to do that.

9         THE COURT:  I see.  You want to stop your case; is

10   that right, Madam?

11        PLAINTIFF BYNUM:  For arbitration, yes.

12        THE COURT:  And for all purposes now, if you take

13   that position, I am going to dismiss it on the merits.

14        PLAINTIFF BYNUM:  Correct.

15        THE COURT:  And then we'll have the Court of Appeals

16   decide whether a dismissal on the merits is appropriate, where

17   one of the parties says "I have been ordered to go to

18   arbitration, but I prefer to withdraw my case."  That's your

19   position.

20        MR. HASSAN:  Yes, Your Honor.  It is the only

21   logical, sensible position.

22        THE COURT:  Okay.  Stop.

23        So I am going to dismiss it on the merits, that is,

24   as I understand it, a final order, but the Court of Appeals

25   decides that, not the district court.  And you can take an

1    appeal if you wish.  You understand that you've -- are you

2    seeking an appeal?

3              PLAINTIFF BYNUM:  Are we seeking an appeal?  Yes.

4              THE COURT:  From my order of dismissal on the

5    merits?

6              PLAINTIFF BYNUM:  That's correct, yes.

7              THE COURT:  You are?

8              MR. HASSAN:  Yes, Your Honor.

9              THE COURT:  Okay.  So all this procedure is designed

10   to permit you to take an appeal from the order of arbitration.

11             MR. HASSAN:  So that we are not forced into

12   arbitration at great financial risk to the plaintiff.

13             THE COURT:  For whatever reason.

14             MR. HASSAN:  We would like to proceed in court, if

15   you like.

16             THE COURT:  I understand.

17             I am going to dismiss.  Either one of you can take

18   it up on appeal, and we will get a ruling on whether you can

19   do this and what the district court should do under these

20   circumstances.  My view is that the easiest and best thing to

21   do is to cut the knot, dismiss on the merits, and end the

22   dispute, without involving a major arbitral association, JAMS

23   or AAA or any others, without involving courts in a further

24   litigation after the arbitration, whatever it may be, with or

25   without the plaintiff.  And in my opinion, without burdening

19

1   the Court of Appeals.  I will issue an opinion dismissing on

2   the merits.

3             MR. HASSAN:  Thank you, Your Honor.

4             MR. BERKOWITZ:  We understand, Your Honor.

5             THE COURT:  Okay.  It would be interesting to listen

6   to this argument on appeal.

7             MR. BERKOWITZ:  I'm sorry?

8             THE COURT:  It would be interesting to listen to

9   this argument on appeal.  Thank you.

10            MR. HASSAN:  Thank you.

11            MS. JUMP:  Thank you.

12            MR. BERKOWITZ:  Thank you.

13            THE COURT:  The defendant will order a copy of the

14  minutes and supply a copy to plaintiff and the court.

15            MR. BERKOWITZ:  Yes, Your Honor.

16            THE COURT:  Immediate copy.

17            MR. BERKOWITZ:  Thank you, Your Honor.

18            (Proceedings concluded at 11:19 a.m.)

19                         *  *  *  *  *

20                    **REPORTER'S CERTIFICATE**

21

22            I, ANNETTE M. MONTALVO, do hereby certify that the
    above and foregoing constitutes a true and accurate transcript
    of my stenographic notes and is a full, true and complete

23  transcript of the proceedings to the best of my ability.

24  /s/Annette M. Montalvo                    Dated 9/14/2016
    Annette M. Montalvo, CSR, RDR, CRR, Official Court Reporter

25