# KEKER & VAN NEST LLP

633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
kvn.com

**Benjamin Berkowitz**
(415) 773-6689
bberkowitz@kvn.com

September 19, 2016

**VIA ELECTRONIC FILING AND FEDERAL EXPRESS**

Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 10B S
Brooklyn, NY 11201

Re:     *Bynum v. Maplebear, Inc. d/b/a Instacart*
        U.S. District Court, Eastern District of New York
        Action No. 1:15-cv-06263-JBW-CLP

Dear Judge Weinstein:

Pursuant to Your Honor's request during the hearing on September 8, 2016 in the above-referenced matter, Instacart hereby provides a copy of the arbitration demand that Instacart filed with JAMS on February 16, 2016, pursuant to Your Honor's order compelling arbitration of Ms. Bynum's claims.

In order to protect Ms. Bynum's privacy and to prevent identify theft, Instacart has redacted sensitive, personal, and private data from this public filing, including Ms. Bynum's social security number, date of birth, driver's license data, tax information, current street name, number, and zip code of her home address, telephone number, email address, and IP address. Instacart has previously provided an unredacted copy of the demand to Ms. Bynum's counsel and is prepared to make the unredacted demand available to the Court for review under seal or in camera, should the Court so desire.

Respectfully submitted,

*/s/ Benjamin W. Berkowitz*

Benjamin W. Berkowitz

BB:rcc
Attachment
cc:     Abdul Hassan, Counsel for Plaintiff *(Via ECF)*

1114738

# EXHIBIT A



# Demand for Arbitration Before JAMS

**TO RESPONDENT:** Melody Bynum
(Name of the Party on whom Demand for Arbitration is made)

Address: ▮▮▮▮▮▮▮▮▮

City: New York    State/Province: NY    Zip: ▮▮▮

Telephone:    Fax:    Email:

Representative/Attorney (if known): Abdul Hassan, Abdul Hassan Law Group, PLLC
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

Address: 215-28 Hillside Avenue

City: Queens Village    State/Province: NY    Zip: 11427

Telephone: (718) 740-1000    Fax: (718) 740-2000    Email: abdul@abdulhassan.com

**Add more respondents on page 5.**

**FROM CLAIMANT (name):** Maplebear, Inc. dba Instacart

Address: 420 Bryant Street

City: San Francisco    State/Province: CA    Zip: 94107

Telephone:    Fax:    Email:

Representative/Attorney of Claimant (if known): Benjamin Berkowitz, Keker & Van Nest LLP
(Name of the Representative/Attorney of the Party Demanding Arbitration)

Address: 633 Battery Street

City: San Francisco    State/Province: CA    Zip: 94111

Telephone: (415) 391-5400    Fax: (415) 397-7188    Email: bberkowitz@kvn.com

**Add more claimants on page 6.**

**Nature of Dispute:** Claimant hereby demands that you submit the following dispute to final and binding arbitration (a more detailed statement of the claim(s) may be attached).

Dispute: Respondent Melody Bynum's claims against Claimant Maplebear, Inc. dba Instacart, as described in the attached complaint filed in Bynum v. Maplebear, Inc. d/b/a Instacart, Case No. 1:15-cv-06263-JBW-CLP (EDNY), and Instacart's defenses to each of those claims.



# Demand for Arbitration Before JAMS

**Arbitration Agreement:** This demand is made pursuant to the arbitration agreement which the parties made as follows (cite location of arbitration provision and attach two (2) copies of entire agreement).

| Arbitration Provision Location: | The arbitration provision is located in the Independent Contractor Agreement attached hereto as Exhibit A, at Section 7 of that agreement.<br><br>The arbitration provision has been modified as reflected in the U.S. District Court's Order Granting Claimant's Motion to Compel Arbitration, attached hereto as Exhibit B. |
|---|---|

**Claim & Relief Sought By Claimant:** Claimant asserts the following claim and seeks the following relief.

| Claim: | Respondent filed multiple claims against Instacart for alleged violations of the Fair Labor Standards Act and state labor codes relating to services she performed as an Instacart Personal Shopper.  Respondent also alleges that she was misclassified as an independent contractor.  Instacart denies those allegations.  Respondent's claims against Instacart were originally filed in federal court in an action before the Hon. Jack B. Weinstein in the Eastern District of New York.  On December 15, 2015, Instacart filed a motion to compel Respondent to resolve her claims against Instacart via binding arbitration with JAMS per the terms of her Independent Contractor Agreement. On February 8, 2016, Judge Weinstein granted Instacart's motion and ordered Ms. Bynum to submit her claims to arbitration with JAMS.  A copy of that Order is attached hereto as Exhibit B. Instacart requests that JAMS accept this demand to adjudicate Respondent's  claims against Instacart, and Instacart's defenses to each of those claims. |
|---|---|

**Amount in Controversy in US Dollars:**

**Response:** Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules.  Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.

## Request for Hearing:

JAMS is requested to set this matter for hearing at: | JAMS, 620 Eighth Avenue, 34th Floor, New York, NY  10018
(Preferred Hearing Location)

## Election For Expedited Procedures (Comprehensive Rule 16.1)

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter.  Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

Signed (Claimant):
(may be signed by an attorney) | Date: February 16, 2016

Type / Print Name: Benjamin Berkowitz

Effective 10/1/2015
Resolution Centers Worldwide ● 1-800-352-5267 ● www.jamsadr.com
(c) copyright 2015 JAMS.  All rights reserved.



# Demand for Arbitration Before JAMS

## COMPLETION OF THIS SECTION IS REQUIRED FOR CLAIMS INITIATED IN CALIFORNIA

**A. Please indicate if this ☐ IS or ☒ IS NOT a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e):**

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

    1) The contract is with a consumer party, as defined in these standards;

    2) The contract was drafted by or on behalf of the non-consumer party; and

    3) The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

    1) An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;

    2) An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;

    3) An individual with a medical malpractice claim that is subject to the arbitration agreement; or

    4) An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

**If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.**

**B. If this is an EMPLOYMENT matter, Claimant must complete the following information:**

Effective January 1, 2003, private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

Annual Salary:    ☐ Less than $100,000    ☐ More than $250,000

               ☐ $100,000 to $250,000    ☐ Decline to State

**C. In California, consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information.



# Demand for Arbitration Before JAMS

**Add additional respondents below.**

TO RESPONDENT 2:
(Name of the Party on whom Demand for Arbitration is made)

Address:

City:                    State/Province:                    Zip:

Telephone:              Fax:                    Email:

Representative/Attorney (if known):
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

Address:

City:                    State/Province:                    Zip:

Telephone:              Fax:                    Email:

TO RESPONDENT 3:
(Name of the Party on whom Demand for Arbitration is made)

Address:

City:                    State/Province:                    Zip:

Telephone:              Fax:                    Email:

Representative/Attorney (if known):
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

Address:

City:                    State/Province:                    Zip:

Telephone:              Fax:                    Email:

Effective 10/1/2015
Resolution Centers Worldwide ● 1-800-352-5267 ● www.jamsadr.com
(c) copyright 2015 JAMS. All rights reserved.



# Demand for Arbitration Before JAMS

**Add additional claimants below.**

**FROM CLAIMANT 2 (name):**

Address:

City:                          State/Province:                    Zip:

Telephone:              Fax:                      Email:

Representative/Attorney of Claimant (if known):
(Name of the Representative/Attorney of the Party Demanding Arbitration)

Address:

City:                          State/Province:                    Zip:

Telephone:              Fax:                      Email:

**FROM CLAIMANT 3 (name):**

Address:

City:                          State/Province:                    Zip:

Telephone                Fax:                      Email:

Representative/Attorney of Claimant (if known):
(Name of the Representative/Attorney of the Party Demanding Arbitration)

Address:

City:                          State/Province:                    Zip:

Telephone:              Fax:                      Email:

Effective 10/1/2015
Resolution Centers Worldwide ● 1-800-352-5267 ● www.jamsadr.com
(c) copyright 2015 JAMS.  All rights reserved.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Melody Bynum,<br><br>                                   Plaintiff,<br><br>               -v-<br><br>Maplebear Inc.,<br>d/b/a Instacart,<br><br>                                   Defendant. | Civ. Action #:<br><br>**Complaint**<br><br>Date Filed:<br><br>**Jury Trial Demanded** |

Plaintiff Melody Bynum ("plaintiff" or "Bynum"), by Abdul Hassan Law Group, PLLC, her attorneys, complaining of the defendant Maplebear Inc. ("defendant"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff alleges that she was employed by defendant, and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216 (b), that she is: (i) entitled to unpaid overtime wages from defendant for working more than forty hours in a week and not being paid an overtime rate of at least 1.5 times her regular rate for such hours over forty in a week; (ii) entitled to maximum liquidated damages and attorneys' fees pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. including 29 U.S.C. §§ 216(b).

2. Plaintiff further complains pursuant to New York Labor Law, that she is: (i) entitled to unpaid overtime wages from defendant for working more than forty hours in a week and not being paid an overtime rate of at least 1.5 times her regular rate for such hours over forty in a week, (ii) is entitled to maximum liquidated damages and attorneys fees, pursuant to the New York Minimum Wage Act ("NYMWA"), N.Y. Lab. Law §§ 650 et seq., including NYLL § 663, and the regulations thereunder as well as NYLL 190-198 and the regulations thereunder.

3. Plaintiff is also entitled to recover her unpaid wages, and unlawful wage deductions, under Article 6 of the New York Labor Law including Section 191, 193, and compensation for not receiving notices and statements required by 195, under Article 6 of the New York Labor Law and is also entitled to maximum liquidated damages and/or interest, and attorneys' fees pursuant

1

to Section 198 of the New York Labor Law.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over plaintiff's claims under the Fair Labor Standards Act pursuant to 29 U.S.C. § 216 (b).

5.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and/or 29 U.S.C. § 216 (b).

6.  This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202.

## THE PARTIES

7.  Plaintiff is an adult, over eighteen years old, who currently resides in Queens County, New York.

8.  Upon information and belief, defendant Maplebear Inc. was a foreign for-profit corporation, incorporated in the State of Delaware and duly authorized and existing under the laws of New York.

## STATEMENT OF FACTS

9.  Upon information and belief and at all times relevant herein, defendant provided delivery persons to businesses such as Costco, Fairway, Wholefoods, and Key Foods etc.

10. Upon information and belief and at all times relevant herein, defendant employed several hundreds of delivery persons like plaintiff.

11. From in or around October 2014 to on or about October 7, 2015 (the "work period), plaintiff was hired by defendant to do delivery work.

12. At all times relevant herein, plaintiff worked for defendant within New York City and served a

2                                          2

specific geographic area such as Kings County and New York County.

13. At all times relevant herein, plaintiff was hired and fired by defendant.

14. During the work period, plaintiff was supervised by defendant.

15. During the work period, defendant directed and instructed plaintiff as to what work to do and how to do such work.

16. During the work period, defendant set plaintiff's work schedule and work hours.

17. During the work period, defendant paid plaintiff based on the hours and schedule it set for plaintiff each week.

18. At all times relevant herein, plaintiff was never in business for herself and was economically dependent for employment, work and wages on defendant.

19. At all times relevant herein, plaintiff's delivery work was integral to defendant's business and that of its clients.

20. At all times relevant herein, plaintiff was required to wear an identification badge around her neck while working for defendant and she did so – the name and logo of defendant was printed on the identification badge.

21. At all times relevant herein, plaintiff was required by defendant to represent herself as an employee of defendant and she did so.

22. When defendant no longer wanted plaintiff to perform work for it, plaintiff was terminated as a result.

23. At all times relevant herein, plaintiff was required to follow defendant's rules and procedures when performing work for defendant and she did so.

24. At all times relevant herein, plaintiff was a manual worker and manual employee of defendant. Plaintiff lifted and transported packages for delivery all throughout her work day and she

performed the physical and manual task of operating a motor vehicle through the day to do the deliveries for defendant.

25. At all times relevant herein, plaintiff was paid at a rate of $10 - $18 an hour at separate times during her employment with defendant.

26. At all times relevant herein, plaintiff was paid at her straight regular rate for all hours worked, including her overtime hours (hours over 40 in a week), for week wherein such overtime hours were worked.

27. At all times relevant herein, plaintiff worked approximately 45-60 hours a week for defendant and sometimes more, 5-6 days a week.

28. A more precise statement of the hours and wages will be made when plaintiff obtains the wage, time and employment records defendant was required to keep under the FLSA (29 USC 211 and 29 CFR 516) and NYLL (NYLL 195 and 12 NYCRR 142-2.6). Accurate copies of plaintiff's wage and time records that defendant was required to keep are incorporated herein by reference.

29. At all times relevant herein, defendant misclassified plaintiff as a non-employee, and as a result, defendant did not pay plaintiff overtime wages of at least 1.5 times her regular rate as required by the FLSA and NYLL.

30. At all times relevant herein, plaintiff was asked to use her personal vehicle to make deliveries for defendant but defendant never reimbursed plaintiff for the use of her vehicle or for expenditures for gas, tolls, etc. At all relevant times herein, plaintiff spent approximately $80-$85 on fuel costs/tolls a week, to perform work for defendant.

31. From in or around June 2015, until her termination, plaintiff was not reimbursed for the cost of parking tickets incurred while performing work for defendant – plaintiff paid about $1000 or more in parking tickets and defendant failed to reimburse plaintiff for such work related expenses.

32. At all times relevant herein, defendant did not provide plaintiff with the notice(s) required by

4                                                        4

NYLL 195(1).

33. At all times relevant herein, defendant did not provide plaintiff with the statement(s) required by NYLL 195(3).

34. At all times relevant herein, defendant did not pay the employment taxes and dues for and on behalf of plaintiff as required by law.

35. At all times relevant herein and for the time plaintiff was employed by defendant, defendant failed and willfully failed to pay plaintiff an overtime rate of at least 1.5 times her regular rate of pay for all hours worked in excess of forty hours in a week for each week in which such overtime was worked.

36. Upon information and belief and at all times relevant herein, defendant had annual revenues from its operations of more than five hundred thousand dollars.

37. Upon information and belief and at all times applicable herein, defendant did not display the required FLSA and NYLL posters of employee wage rights as was required by the FSLA and NYLL and the regulations thereunder.

38. The relevant and applicable times will be refined as is necessary, including after discovery if necessary.

39. The "·present" or the "present time" as used in this complaint refers to the date this complaint was signed.

## AS AND FOR A FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

40. Plaintiff alleges and incorporates by reference the allegations in paragraphs 1 through 39 above as if set forth fully and at length herein.

41. At all times relevant herein, defendant misclassified plaintiff as an independent contractor, even though plaintiff was at all relevant times, an employee of defendant as a matter of law.

5

42. Plaintiff seeks a declaratory judgment that at all relevant times herein, she was an employee of defendant under the Internal Revenue Code, and specifically, under the Federal Insurance Contributions Act ("FICA"). See 26 U.S.C. § 3121(b). U.S. v. MacKenzie  777 F.2d 811, 814 (2d Cir., 1985).

43. Plaintiff also seeks a declaratory judgment that at all relevant times herein, she was an employee of defendant under the federal Fair Labor Standard Act and New York Labor Law under which plaintiff sues herein. See Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141–42 (2d Cir.2008). Brock v. Superior Care, Inc., 840 F.2d 1054 (2d Cir.1988).

44. The declarations of employee status sought by plaintiff herein, will allow plaintiff to seek certain tax contributions from defendant, as well as make her eligible to seek a range of benefits that comes with employee status such as unemployment insurance benefits, as well as benefits offered by defendant to its other employees and other benefits provided by law to employees. Plaintiff herein is seeking to recover all benefits that come with employee status that can be recovered in this action under law.

### AS AND FOR A SECOND CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT - 29 U.S.C 201 et Seq. (Unpaid Overtime Wages)

45. Plaintiff alleges and incorporates by reference the allegations in paragraphs 1 through 44 above as if set forth fully and at length herein.

46. At all times relevant herein, plaintiff was employed by defendant within the meaning of the FLSA - 29 U.S.C § 201 et Seq.

47. At all times relevant herein, plaintiff was engaged in commerce and/or in the production of goods for commerce and/or defendant constituted an enterprise(s) engaged in commerce within the meaning of the FLSA including 29 U.S.C. § 207.

48. At all times relevant herein, defendant, transacted commerce and business in excess of $500,000.00 annually or had revenues or expenditures in excess of $500,000.00 annually.

49. At all times relevant herein, defendant failed and willfully failed to pay plaintiff overtime compensation at rates of at least 1.5 times her regular rate of pay for each hour worked in excess of forty hours in a work week, in violation of 29 U.S.C. § 207.

### Relief Demanded

50. Due to defendant's FLSA violations, plaintiff is entitled to recover from defendant, her unpaid overtime compensation, maximum liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b).

### AS AND FOR A THIRD CAUSE OF ACTION
### NYLL 650 et Seq. and 12 NYCRR 142-2.2 (Unpaid Overtime)

51. Plaintiff alleges and incorporates by reference the allegations in paragraphs 1 through 49 above as if set forth fully and at length herein.

52. At all times relevant to this action, plaintiff was employed by defendant within the meaning of the New York Labor Law, §§ 2 and 651 and the regulations thereunder including 12 NYCRR § 142.

53. At all times relevant herein, defendant failed to pay and willfully failed to pay plaintiff overtime compensation at rates not less than 1.5 times her regular rate of pay for each and all hours worked in excess of forty hours in a work week, in violation of the New York Minimum Wage Act and its implementing regulations. N.Y. Lab. Law §§ 650 et seq.; 12 NYCRR § 142-2.2.

### Relief Demanded

54. Due to defendant's NYLL overtime violations, plaintiff is entitled to recover from defendant, her unpaid overtime wages, maximum liquidated damages, prejudgment interest, attorney's fees, and costs of the action, pursuant to NYLL § 663.

### AS AND FOR A FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW § 190, 191, 193 and 198

55. Plaintiff alleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force and effect as if fully set forth at length herein.

56. At all times relevant to this action, plaintiff was employed by defendant within the meaning of the New York Labor law, §§ 190 et seq., including §§ 191, 193 and 198 and the applicable regulations thereunder.

57. Defendant violated and willfully violated plaintiff's rights under NY Labor Law § 190 et seq. including NY Labor Law §§ 191, 193 and 198 by withholding, deducting, and not reimbursing plaintiff the monies plaintiff paid for gas/tolls, and parking tickets, while performing work for defendant, as set forth above, and by failing to pay plaintiff all her non-overtime and overtime wages, as required under NY Labor Law § 190 et seq.

58. At all times relevant herein, defendant failed and willfully failed to provide plaintiff, with the notice(s) required by NYLL 195(1) – plaintiff is therefore entitled to and seek to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b), as well as an injunction directing defendant to comply with NYLL 195(1).

59. At all times relevant herein, defendant failed and willfully failed to provide plaintiff with the statement(s) required by NYLL 195(3) – plaintiff is therefore entitled to and seek to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d), as well as an injunction directing defendant to comply with NYLL 195(1).

### Relief Demanded

60. Due to defendant's New York Labor Law Article 6 violations including violation of section 191 and 193, plaintiff is entitled to recover from defendant, the entire unpaid non-overtime and overtime wages, reimbursement for unlawful deductions, plus maximum liquidated damages, prejudgment interest, maximum recovery for violations of NYLL 195(1) and NYLL 195(3), reasonable attorneys' fees, and costs of the action, pursuant to N.Y. Labor Law § 190 et seq. including § 198.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

61. Declare defendant (including its overtime and wage payment policy and practice as well as its wage deduction policy and practice), to be in violation of the rights of plaintiff under the FLSA and New York Labor Law - 12 NYCRR § 142, and Article 6 of the NYLL, including NYLL §§ 191, 193, 196 and 198.

62. As to the **First Cause of Action**, issue a declaratory judgment that plaintiff at all relevant times was an employee of defendant under the Internal Revenue Code, including the Federal Insurance Contributions Act, as well as under the FLSA and NYLL.

63. As to the **Second Cause of Action,** award plaintiff her unpaid overtime compensation due under the FLSA, together with maximum liquidated damages, costs and attorneys' fees pursuant to 29 USC § 216(b);

64. As to the **Third Cause of Action,** award plaintiff her unpaid overtime compensation due under the New York Minimum Wage Act and the regulations thereunder including 12 NYCRR § 142-2.2, together with maximum liquidated damages, prejudgment  interest, costs and attorney's fees pursuant to NYLL § 663;

65. As to the **Fourth Cause of Action**, award plaintiff her entire unpaid wages, including her unpaid non-overtime and overtime wages, reimbursement for unlawful deductions, maximum liquidated damages, prejudgment interest, maximum recovery for violations of NYLL 195(1) and NYLL 195(3), reasonable attorney's fees, and costs of the action, pursuant to N.Y. Labor Law § 190 et seq. including § 198, and issue an injunction directing defendant to comply with NYLL 195(1) and NYLL 195(3).

66. Award plaintiff, any relief requested or stated in the preceding paragraphs but which has not been requested in the WHEREFORE clause or "PRAYER FOR RELIEF", in addition to the relief requested in the wherefore clause/prayer for relief;

67. Award plaintiff further and different relief as the Court deems just and proper.

**Dated: Queens Village, New York**

9                                                    9

**October 30, 2015**


Respectfully submitted,

Abdul Hassan Law Group, PLLC

/s/ Abdul Hassan_____
By: Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue
Queens Village, NY 11427
Tel: 718-740-1000
Fax: 718-740-2000
Email: abdul@abdulhassan.com
*Counsel for Plaintiff*

# TAB A

Case 1:15-cv-06263-JBW-CLP   Document 61   Filed 09/19/16   Page 19 of 67 PageID #: 477





Sign documents

contracts@instacart.com ✔

Instacart Paperwork

Edit signature

REMAINING CREDITS

Unlimited documents

Unlimited templates

Settings

Logout

**PREVIEW**

Instacart Shopper Pape... Melody Bynum - (6428)

BACK TO DOCUMENTS

### INSTACART SHOPPER PAPERWORK

**1. Independent Contractor Agreement – 10 pages**
*Explains the terms and conditions for becoming an Instacart Shopper*

**2. Disclosure and Authorization to Conduct Background Check – 5 pages**
*Allows us to conduct a background and driving record check*

**3. W-9 – 1 page + 3 pages of instructions**
*For tax purposes*

00180112

1

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is made effective as of 10 / 15 / 2014 by and between Maplebear, Inc., doing business as Instacart ("Company"), and Melody Bynum , an individual ("Contractor") (collectively referred to as the "Parties").

Full Name

## 1   SERVICES OF CONTRACTOR

Company hereby engages Contractor to perform, and Contractor agrees to perform, the services described in Exhibit A attached to this Agreement (the "Services").  If Company desires that Contractor perform additional Services, Company and Contractor shall execute an additional exhibit to this Agreement setting forth the nature of such additional Services, the fees payable for such Services and any other terms and conditions with respect thereto.  Each such additional exhibit shall incorporate the terms and conditions set forth herein, except as expressly set forth in such additional exhibit.  The standard for acceptance of the Services to be performed hereunder shall be compliance in all material respects with the standards and requirements set forth in Exhibit A (or any additional exhibit).  All Services shall be subject to Company's review and approval.

## 2   FEES

Company agrees to pay Contractor for the Services pursuant to the fee schedule set forth in Exhibit A.  As a condition of receiving payment, Contractor shall provide Company with Contractor's taxpayer identification number and submit an invoice to Company in a format acceptable to Company.  Contractor shall be responsible for all expenses incurred or necessary in the performance of the Services, including but not limited to telephone, mailing and travel expenses. Contractor shall pay twenty-five cents per batch picked for use of the proprietary "Instacart Shopper" app provided to contractor by Company.

## 3   TERM OF AGREEMENT

This Agreement will continue for the period of time necessary for Contractor to complete the Services, or upon delivery to Contractor of written notice from Company terminating this Agreement, which may be provided at any time.  Unless Contractor shall have breached its obligations hereunder, if Company shall terminate this Agreement before Contractor shall have completed the Services, Company shall pay Contractor its fees to the extent performed, completed and delivered as of the effective date of termination in compliance with Company's specifications or otherwise accepted in writing by Company. If Contractor shall have breached its obligations under this Agreement, any amount payable by Company may be reduced by the actual damages suffered by Company as a result thereof.  A breach by Contractor shall include, but not be limited to, Contractor's failure to complete the Services specified herein in a manner satisfactory to Company and as required by Exhibit A, Contractor's unauthorized disclosure of Confidential Information (as defined below), breach of any other obligations hereunder, or Contractor's carelessness, misconduct or unjustifiable neglect of its duties hereunder.

00180112                                                                                        2

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

11/18/2015
Case 1:15-cv-06263-JBW-CLP   Document 61   Filed 09/19/16   Page 22 of 67 PageID #: 480
Sign documents online | HelloSign

4   RELATIONSHIP OF THE PARTIES

4.1   Contractor enters into this Agreement as, and shall continue to be, an independent contractor.   Under no circumstances shall Contractor look to Company as Contractor's employer, partner, joint venturer, agent, or principal, nor shall this Agreement be construed to establish any such relationship.   Contractor shall not be entitled to any benefits accorded to Company's employees, including workers' compensation, disability insurance, health insurance, vacation, or sick pay.

4.2   Contractor shall be solely responsible for payment of worker's compensation, disability insurance, health insurance, and/or other similar benefits, unemployment or other similar insurance, all necessary liability insurance of Contractor and its personnel, if appropriate, and for withholding income and reporting wages on behalf of its personnel in accordance with all applicable laws, statutes, and regulations and/or other similar taxes or social security for Contractor as levied by any governmental authority.   Company shall not be liable for any penalties and/or late fees, which may be imposed if such taxes are not paid by Contractor. Contractor further agrees that Contractor shall defend, indemnify and hold Company, and its affiliates, and their respective officers, directors, shareholders, employees, agents, successors and permitted assigns thereof harmless for any and all judgments, fines, costs, penalties, assessments or fees associated with such required payments.

4.3   Contractor has no authority to make promises, agreements or otherwise make commitments on Company's behalf.

4.4   Contractor may represent, perform services for, or be employed by, any additional persons, or companies as Contractor sees fit.

5   CONTRACTOR'S REPRESENTATIONS AND INDEMNITIES

5.1   Contractor represents that Contractor has the qualifications, licenses and ability to perform the Services in a competent, professional manner.   Contractor shall be solely responsible for the performance of the Services and shall determine the method, details, and means of performing the Services, subject to the standards set forth herein or in Exhibit A.

5.2   Contractor shall and does hereby indemnify, defend, and hold harmless Company, and Company's officers, directors, shareholders, employees and agents, and its or their successors and assigns, from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies, including interest, penalties, and reasonable attorney fees and costs, that any of the foregoing persons may incur or suffer and that result from, or are related to, the performance of Services by Contractor, or any breach or failure of Contractor to perform any of the representations, warranties, and agreements set forth in this Agreement.

5.3   Contractor shall be responsible for providing, at Contractor's expense, and in Contractor's name, workers' compensation, automotive liability, or other insurance as well as licenses and permits usual or necessary for performing the Services.   Contractor shall provide proof of insurance coverage upon request by Company.

6   NONDISCLOSURE OF CONFIDENTIAL INFORMATON

00180112                                                                                                3

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cd4ee9828b8e5

11/18/2015                                    Sign documents online I HelloSign

6.1   During the course of Contractor's relationship with Company, Contractor may have access to and become acquainted with confidential, proprietary and trade secret information of Company and/or its clients (collectively, "Confidential Information"), which is very valuable to Company.  Confidential Information includes all information relating in any manner to the business of Company or its clients, as applicable, and its and their consultants, customers, clients, and business associates, which is not known generally to the public.  Confidential Information also includes, but is not limited to, trade secrets, client or vendor lists, client information, contracts, agreements, accounting or financial information, pricing information, business plans and data, formulae, technical know how, processes, methods, techniques, procedures, software, data bases, personnel information, marketing strategies and data, pending projects and proposals, programs, designs, drawings, diagrams, test data, research and other such information of a confidential nature regardless of whether furnished before or after the date hereof, whether oral or written, and regardless of the form of communication or the manner in which it is furnished and all analyses, compilations, data, studies, notes, interpretations, memoranda, extracts or other documents prepared by Contractor containing or based in whole or in part on any such furnished information.  Contractor specifically agrees that all Confidential Information shall be treated as confidential without regard to whether any specific item of information or material has been labeled "Confidential," "Secret," or "Trade Secret," or any similar designation.  Confidential Information does not include, however, information that Contractor can show by documentary evidence: (i) is or becomes generally available to the public through no wrongful act of Contractor; or (ii) has been independently acquired or developed by Contractor without violating any of Contractor's obligations under any agreement with Company, any agreement with a third party, or applicable law.

6.2   Contractor (i) will hold and maintain all Confidential Information in the strictest confidence; (ii) except as reasonably necessary to perform Contractor's Services or as authorized in writing by Company, will not at any time, whether during or subsequent to the Term of this Agreement, in any fashion, form or manner, either directly or indirectly, use, divulge, disclose or communicate any Confidential Information to any person, firm, corporation or entity in any manner whatsoever; and (iii) shall require, and insure that, its directors, officers, employees, agents and permitted subcontractors who may receive Confidential Information maintain the same in strict confidence and not use or disclose the Information except as permitted under this Agreement.  Contractor acknowledges that further customer-specific compliance requirements may be applicable and enforceable against Contractor.

6.3   Contractor agrees that all drawings, memorandums, invoices, diaries, project books, notebooks, sketches, reports, manuals, computer programs, computer files and any other materials in any manner and in any medium affecting, recording or relating to Company's Confidential Information shall at all times be and remain Company's sole property, and shall not be removed from Company's premises under any circumstances whatsoever without Company's prior written consent, except when (and only for the period) necessary to carry out Contractor's Services hereunder, and if removed shall be immediately returned to Company upon termination of this Agreement, and no copies shall be kept by Contractor. Upon Company's request, Contractor will provide a declaration to Company certifying that all Confidential Information and all copies thereof have been delivered to Company, and deleted from Contractor's computers, lap tops, or other electronic or recording device.

6.4   If Contractor is required by applicable law or regulation or by legal process to disclose any Confidential Information, Contractor will immediately notify Company in writing prior to making any such disclosure and assist Company in seeking a protective order or other

00180112                                                                                     4

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8o5

11/18/2015                              Sign documents online | HelloSign

appropriate remedy.   Contractor further agrees that if Company is not successful in precluding the requesting legal body from reviewing the Confidential Information, Contractor will furnish only that portion of the Confidential Information that is legally required and will exercise its best efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

6.5   The restrictions placed upon Contractor in this Section will survive the termination of this Agreement, and continue in perpetuity.   Contractor agrees that any breach of any term of this Section is a material breach of this Agreement.

## 7   DISPUTE RESOLUTION

7.1   Following the full opportunity to discuss and negotiate over this dispute resolution procedure, the Parties agree that to the fullest extent permitted by law, any controversy, dispute or claim arising out of or relating to the Services performed by the Contractor, this Agreement, the breach, termination, interpretation, enforcement, validity, scope and applicability of any such agreement, or any allegations of discrimination or harassment on any basis under federal, state, or local law, which could otherwise be heard before any court of competent jurisdiction (a "Dispute"), shall be submitted to and determined exclusively by binding arbitration.   The Parties agree that a Dispute arising under any law that requires resort to an administrative agency may be brought before such agency as permitted by law, and that after exhaustion of administrative remedies, the Parties must pursue such Dispute through this binding arbitration procedure to the fullest extent permitted by law.

7.2   The arbitration shall be administered by JAMS at its office located at Two Embarcadero Center, Suite 1500, San Francisco, CA 94111, pursuant to its Employment Arbitration Rules and Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness (collectively, "Rules") that are in effect when arbitration is demanded. Attached as Exhibit B is a copy of the current version of the Rules.   Any subsequent modifications to the Rules would be available at www.jamsadr.com.   In the event of any conflict between the Rules and this Agreement, this Agreement shall apply.   The Parties agree to submit to the jurisdiction of a single neutral arbitrator selected in accordance with the Rules.

7.3   The parties will equally advance all of the arbitrator's expenses and fees.   The arbitrator will allow for sufficient discovery procedures, including access to essential documents and witnesses, to satisfy principles of due process.   The arbitrator may award any remedy or relief available under applicable law in a court proceeding, including, without limitation, damages, costs, and injunctive relief.   The arbitrator shall not have the power or authority to commit errors of law or legal reasoning.   After completion of the arbitration, the arbitrator shall submit a decision in writing, specifying the findings of fact and the conclusions of law on which the decision is based; in his discretion, the arbitrator may award fees and costs to the prevailing party.

7.4   The Parties agree that the enforceability of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 2), and acknowledge that Company's business and the nature of Contractor's services involve interstate commerce.   The arbitrator shall apply California substantive law to the proceeding, except for any claim to which Federal substantive law would apply.   **The Parties each expressly waive the right to a jury trial and agree that the arbitrator's award shall be final and binding on the Parties.**   Any action to review the arbitration award for legal error or to have it confirmed, corrected or vacated shall be decided

00180112                                                                    5

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

pursuant to California law and shall be filed and maintained in a California state court of
competent jurisdiction.

8   NOTICES

All notices, consents, or communications required or permitted under this Agreement shall be
in writing and shall be addressed to the other Party at the address set forth on the signature
page of this Agreement. A notice shall be effective (i) upon personal delivery if given by hand
delivery, (ii) the date of the completed transmission if given by facsimile, (iii) one business day
after deposit, prepaid, with Federal Express or similar overnight delivery service for next
business day delivery, or (iv) two business days after deposit with the United States Post
Office, by registered or certified mail, postage prepaid. Each Party may, by five days advance
written notice to all other Parties, specify any other address for the receipt of such notices.

9   SUCCESSORS AND ASSIGNS

This Agreement is intended to bind and inure to the benefit of and be enforceable by
Company, Contractor, and their respective heirs, successors and assigns, except that
Contractor may not assign Contractor's rights or delegate Contractor's duties or obligations
hereunder (including, without limitation, pursuant to any subcontract) without the prior written
consent of Company, which may be given or withheld in the sole and absolute discretion of
Company.

10  SEVERABILITY

If any provision of this Agreement, or any part thereof, be declared or determined by any
arbitrator or court to be illegal, invalid or unenforceable and are therefore stricken or deemed
waived, the remainder of the provision and the Agreement shall nonetheless remain binding in
effect, and shall be interpreted in a way to achieve the goals or intent of the stricken or waived
provisions to the extent such interpretation is consistent with applicable law.

11  WAIVER

No waiver by any Party to this Agreement of any provision hereof shall be deemed to be a
waiver of any other provision of this Agreement, or of any subsequent breach of such
provision, or a waiver of any other provision of this Agreement by any other Party.

12  REMEDIES CUMULATIVE

Nothing in this Agreement shall constitute a waiver or limitation of any right or remedy,
whether in equity or at law, which either Party may have under this Agreement or applicable
law. All rights and remedies of each Party to this agreement, whether under this Agreement
or applicable law, shall be cumulative.

13  GOVERNING LAW

This Agreement and the rights of the Parties shall be governed by and construed in
accordance with the laws of the State of California. The language in all parts of this
Agreement shall in all cases be construed according to its fair meaning and not strictly for or
against either Party.

00180112                                                                                    6

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

## 14  ENTIRE AGREEMENT

This Agreement supersedes any and all other agreements between Contractor and Company, whether oral or in writing, and contains all of the covenants and agreements between Contractor and Company with respect to Contractor's services. Contractor and Company each acknowledge that no representations, inducements, promises, or agreements, originally or otherwise, have been made to either Party to the other, or by anyone acting on behalf of either Party, which are not embodied herein. This Agreement can only be modified by a written agreement executed by Contractor and by the President of Company.

IN WITNESS WHEREOF, the Parties have executed this Independent Contractor Agreement effective on the day and year first written above.

COMPANY                                         CONTRACTOR

By:_____            By:_____

Name:_____            Name:___Melody Bynum_____

Title:_____            SSN:_____

Mailing Address:                                Mailing Address:

Instacart                                       Street:_____
92 South Park Street
San Francisco, CA 94107                         City, State, Zip New York, NY_____

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

EXHIBIT A

1   SERVICES TO BE PERFORMED

Company has retained Contractor to perform the following Services:

- Shopping and delivery services for customers of Company

2   FEES AND PAYMENT

The project fees applicable for the Services are as follows:

For each "batch" of orders picked, contactor will receive the greater of $5 (five dollars) per batch or 50 (fifty) cents per item picked. Contractor will receive an additional commission of $5 per order delivered. Contractor will also receive an additional twenty five cents per batch if he or she wears an "Instacart" shirt while picking the batch and delivering all orders comprised of that batch. The contractor will be charged $0.25/batch for the use of the app.

This compensation schedule can be changed by Instacart at any time with ten days' notice.

00180112                                           8

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

EXHIBIT B

JAMS Employment Arbitration Rules and Procedures and
Policy on Employment Arbitration Minimum Standards of Procedural Fairness

**Effective July 15, 2009**

This document presents the principles and policies of JAMS on the use of arbitration for resolving employment-related disputes. These policies include the "Minimum Standards of Procedural Fairness," which apply to arbitrations based on pre-dispute agreements that are required as a condition of employment. JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards.

JAMS continues to urge employers and employees to use, at the earliest point possible, mediation and other ADR processes that encourage consensual resolution of disputes in a fair, affordable, and efficient manner. We also recommend that employers consult with counsel when considering, drafting, or implementing pre-dispute arbitration clauses that relate to statutory employment claims.

**A. Preference for Mediation and Voluntary Arbitration**

JAMS encourages the use of mediation and of voluntary arbitration that is not a condition of initial or continued employment. JAMS does not take a position on the enforceability of condition-of-employment arbitration clauses, but it monitors developments in courts, legislatures and regulatory agencies concerning the enforceability of the clauses. If courts rule definitively that such clauses are unenforceable, or if laws or regulations proscribe their use, JAMS will comply with the rulings or laws in the applicable cases or jurisdictions. Absent such proscriptions, JAMS accepts arbitration assignments based on condition-of- employment clauses (provided the Minimum Standards are met), but does not encourage the use of such clauses.

**B. Minimum Standards of Procedural Fairness**

If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the "Minimum Standards of Procedural Fairness for Employment Arbitration."

**Standard No. 1: All Remedies Available**

All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available in the arbitration. Post-arbitration remedies, if any, must remain available to an employee.

*Comment:* This standard does not make any change in the remedies available. Its purpose is to ensure that the remedies available in arbitrations and court proceedings are the same. JAMS does not object if an employer chooses to limit its own post-arbitration remedies.

**Standard No. 2: Arbitrator Neutrality**

The arbitrator(s) must be neutral, and an employee must have the right to participate in the selection of the arbitrator(s).

00180112                                                                                          9

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

Standard No. 3: Representation by Counsel

The agreement or clause must provide that an employee has the right to be represented by counsel. Nothing in the clause or procedures may discourage the use of counsel.

Standard No. 4: Access to Information/Discovery

The procedures must provide for an exchange of core information prior to the arbitration.

*Comment:* Generally this discovery should include at least (a) exchange of relevant documents, (b) identification of witnesses, and (c) one deposition for each side, i.e., of the employee and of a supervisor or other decision-maker of the employer. Other discovery should be available at the arbitrator's discretion.

Standard No. 5: Presentation of Evidence

At the arbitration hearing, both the employee and the employer must have the right to (a) present proof, through testimony and documentary evidence, and (b) to cross- examine witnesses.

Standard No. 6: Costs and Location Must Not Preclude Access to Arbitration

An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration. The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.

*Comment:* JAMS does not preclude an employee from contributing to administrative and arbitrator fees and expenses.

Standard No. 7: Mutuality

JAMS will not administer arbitrations pursuant to clauses that lack mutuality. Both the employer and the employee must have the same obligation (either to arbitrate or go to court) with respect to the same kinds of claims.

Standard No. 8: Written Awards

An arbitration award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, awarded as to each claim. The Arbitrator will also provide a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the award is based.

\*\*\* If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand will not be accepted unless there is full compliance with those standards. In assessing whether the standards are met and whether to accept the arbitration assignment, JAMS, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure. If a factual inquiry is required, for example, to determine compliance with Minimum Standards, it must be conducted by an arbitrator or court.

00180112                                                                 10

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

## C. Questions About Enforcement and Arbitrability

If a party contests the enforceability of a pre-dispute arbitration agreement that was required as a condition of employment, and if compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue. JAMS will comply with that judicial determination. If there is no judicial determination within a reasonable period of time, JAMS will resolve questions of arbitrability under the applicable JAMS Arbitration Rules & Procedures for Employment Disputes.

## D. Other

Parties to an employment arbitration may choose to follow the Arbitration Rules & Procedures for Employment Disputes that were developed by JAMS. These Rules & Procedures exceed the Minimum Standards by providing further procedural protections, including additional discovery and an optional appeal process, to all parties in an employment arbitration.

JAMS is committed to ensuring that all staff who work on employment-related dispute resolution issues are aware of these principles and policies. Internal controls are used to ensure knowledge and compliance by the staff, and to ensure that the company's marketing activities in the employment area do not give rise to any actual or perceived conflict of interest on the part of JAMS or its neutrals.

*Note: These Minimum Standards do not apply if the agreement to arbitrate was individually negotiated by the employee and employer or the employee was represented or advised by counsel during the negotiations.*

00180112                                                                                          11

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

## DISCLOSURE AND AUTHORIZATION TO CONDUCT BACKGROUND CHECK

[IMPORTANT -- PLEASE READ CAREFULLY BEFORE SIGNING AUTHORIZATION]

As part of our evaluation process for employment, promotion, retention, contingent or temporary staffing, consulting, sub-contract work, or volunteer work, MAPLEBEAR INC DBA INSTACART "COMPANY" may obtain information about you for employment purposes from a third party consumer reporting agency. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" (background check) which may include information about your character, general reputation, personal characteristics, and/or mode of living, and which may involve personal interviews with sources such as your associates, colleagues, neighbors or friends. These reports may contain information regarding your criminal history, Social Security verification, motor vehicle records ("driving records"), verification of your education or employment history, or other background information. Credit history may be requested, but only where such information is substantially related to the duties and responsibilities of the position for which you are applying.

You have the right, upon written request made within a reasonable time, to learn whether a consumer report has been requested about you. You also have the right to obtain a disclosure of the nature and scope of any investigative consumer report and to request a copy of your report. Please be advised that the nature and scope of the most common form of investigative consumer report obtained with regard to applicants for employment is an investigation into your education and/or employment history.

All reports referenced in this document will be obtained from Frasco Profiles, 215 W. Alameda Avenue, Burbank, CA 91502, Phone: (800) 820-9029, Fax: (818) 567-1215, www.frascoprofiles.com. The scope of this notice and authorization is all-encompassing, allowing COMPANY to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and throughout the course of your employment to the extent permitted by law. As a result, you should carefully consider whether to exercise your right to request disclosure of the nature and scope of any investigative consumer report.

12

Doc ID: a4a5b0228d5dff19ecaac0c5cf9d4ee9828b8e5

## APPLICANT IDENTIFICATION INFORMATION

This information is being collected for the sole purpose of completing your background check.  No information provided below will be used as
hiring criteria.  For information regarding Frasco Profiles' privacy policy, please refer to www.frascoprofiles.com

| Last Name | First Name | Middle Name |
|---|---|---|
| Bynum | Melody | S |

| Other Names Used in Past 10 Years: |
|---|
| N/A |

| Social Security Number: |
|---|
| |

| Month of Birth: | Day of Birth: | Year of Birth: |
|---|---|---|
| | | |

| Drivers License Number*: |
|---|
| |

| State of Drivers License Number: |
|---|
| |

| Prior Drivers License Numbers & States of Issue: |
|---|
| |

| If no DL, State Issued ID Card # & State of Issue: |
|---|
| |

| Present Street Address: |
|---|
| |

| City: | State: | Zip Code: |
|---|---|---|
| New York | NY | |

| Past Address if Above Less than 1 Year |
|---|
| |

| City: | State: | Zip Code: |
|---|---|---|
| Jamaica | NY | |

| Phone Number w/Area Code: |
|---|
| |

| Alternate Phone Number w/Area Code: |
|---|
| |

| Email Address: |
|---|
| |

13

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

## ACKNOWLEDGMENT AND AUTHORIZATION

I acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND INVESTIGATION on page 1 of this document and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of those documents.

I hereby authorize the obtaining of "consumer reports" and/or "investigative consumer reports" by COMPANY at any time after receipt of this authorization and throughout my employment, if applicable. To this end, I hereby authorize, without reservation, any law enforcement agency, court administrator, state or federal agency, institution of learning, school or university (public or private), information service bureau, employer, credit bureau, department of motor vehicles or driver licensing bureau, military branch or National Personnel Records Center, sex offender registry, licensing board, workers' compensation administrator, personal or professional reference to furnish any and all background information requested by Frasco Profiles, 215 W. Alameda Avenue, Burbank, CA 91502, Phone: (800) 820-9029, Fax: (818) 567-1215, www.frascoprofiles.com, another outside organization or individual acting on behalf of Frasco Profiles, and/or COMPANY itself. I agree that a facsimile ("fax"), electronic or photographic copy of this Authorization shall be as valid as the original.

California applicants or employees only: By signing below, you also acknowledge receipt of the Additional Notice to California Applicants. Please check this box if you would like to receive a copy of an investigative consumer report or consumer credit report at no charge if one is obtained by COMPANY whenever you have a right to receive such a copy under California law. ☐

Full Name (print): _____Melody Bynum_____

Other Full Names used in past ten years: ___N/A_____

_____

Social Security Number: ___█████████_____

Signature: _____~Melody Bynum~_____ Date: ___10 / 15 / 2014_____

14

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

11/18/2015                                     Sign documents online | HelloSign

*Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20006.*

## A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20006.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
    - a person has taken adverse action against you because of information in your credit report;
    - you are the victim of identity theft and place a fraud alert in your file;
    - your file contains inaccurate information as a result of fraud;
    - you are on public assistance;
    - you are unemployed but expect to apply for employment within 60 days.
  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to

15

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit **www.consumerfinance.gov/learnmore**.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates.<br><br>b. Such affiliates that are not banks, savings associations or credit unions also should list in addition to the CFPB: | a. Consumer Financial Protection Bureau<br>1700 G Street NW,<br>Washington, DC 2006<br><br>b. Federal Trade Commission: Consumer Response Center – FCRA<br>Washington, DC 20580   1-877-382-4357 |
| 2. To the extent not included in item 1 above:<br><br>a. National banks, federal savings associations, federal branches and federal agencies of foreign banks.<br><br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act.<br><br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and Insured state savings associations.<br><br>d. Federal Credit Unions | a. Office of the Comptroller of the Currency<br>Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050.<br><br>b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480<br><br><br><br>c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11,<br>Kansas City, MO 64106<br><br>d. National Credit Union Association<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach(DCCO)<br>1775 Duke Street,<br>Alexandria, VA 22314 |
| 3. Air Carriers | Asst. General Counsel for Aviation & Enforcement Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue SE<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street, S.W.<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor. |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>406 Third Street, SW, 8th Floor,<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F St. NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center-FCRA Washington, DC 20580<br>877-382-4357 |

16

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

# REDACTED

Form W-9 (Rev. 12-2011)                                                                                    Page **2**

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States in the following cases:

• The U.S. owner of a disregarded entity and not the entity,

• The U.S. grantor or other owner of a grantor trust and not the trust, and

• The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

**Updating Your Information**

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

**Specific Instructions**

**Name**

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income will be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a domestic owner, the domestic owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, you must complete an appropriate Form W-8.

**Note.** Check the appropriate box for the federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the tax classification in the space provided. If you are an LLC that is treated as a partnership for federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

Form W-9 (Rev. 12-2011)

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/disregarded entity name" line.

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the "Business name/disregarded entity name," sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 5 and 7 through 13. Also, C corporations. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, below, and items 4 and 5 on page 4 indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see *Exempt Payee* on page 3.

**Signature requirements.** Complete the certification as indicated in items 1 through 3, below, and items 4 and 5 on page 4.

**1.** Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

**2.** Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3.** Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5

Form W-9 (Rev. 12-2011)

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you,** acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.*

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

Doc ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5



## Audit Trail
Unique document ID: a4a5b0228d5dff19ecaac0c5cf9cf4ee9828b8e5
Document name: Instacart Shopper Paperwork - Melody Bynum -...
Status: Signed and closed

**10/09/2014**

08:18:00 UTC-8    Document sent for signature to: Melody Bynum
                  IP: █████████

09:28:45 UTC-8    Document viewed by Melody Bynum █████████
                  IP: █████████

**10/14/2014**

16:37:38 UTC-8    Document viewed by Melody Bynum █████████
                  IP: █████████

**10/15/2014**

07:15:26 UTC-8    Document viewed by Melody Bynum █████████
                  IP: █████████

08:52:05 UTC-8    Document signed by Melody Bynum █████████
                  IP: █████████

08:52:05 UTC-8    The document has been signed and is now closed.

# TAB B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**MEMORANDUM & ORDER**

MELODY BYNUM,

                Plaintiff,

15-CV-6263

  – against –

MAPLEBEAR INC., d/b/a INSTACART,
            Defendant.

**Parties**

**Appearances**

**Melody Bynum**

represented by **Abdul Karim Hassan**
Abdul Hassan Law Group, PLLC
215-28 Hillside Avenue
Queens Village, NY 11427
718-740-1000
Fax: 718-740-2000
Email: abdul@abdulhassan.com

**Maplebear Inc.**
*doing business as*
Instacart

represented by **Alice Keeney Jump**
Reavis Parent Lehrer LLP
41 Madison Avenue
41st Floor
New York, NY 10010
Email: ajump@rpl-law.com

**Benjamin W. Berkowitz**
**Nikki Vo**
**Ryan Wong**
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA 94111
Email: bberkowitz@kvn.com
Email: nvo@kvn.com
Email: rwong@kvn.com

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I.      Introduction ........................................................................................................... 2

II.     Factual and Procedural Background ..................................................................... 3

   A.  Parties ............................................................................................................... 3

       1.   Defendant Instacart ..................................................................................... 3

       2.   Plaintiff Melody Bynum ............................................................................... 4

   B.  Agreement between Bynum and Instacart ......................................................... 4

       1.   Application Process ...................................................................................... 4

       2.   HelloSign ...................................................................................................... 5

       3.   Parties' Obligations ..................................................................................... 5

       4.   Arbitration Agreement ................................................................................. 6

       5.   Severability .................................................................................................. 7

       6.   Governing Law ............................................................................................. 7

   C.  Defendant's Motion to Compel Arbitration ...................................................... 7

III.    Law ....................................................................................................................... 8

   A.  Federal Arbitration Act .................................................................................... 8

   B.  Valid Arbitration Agreement .......................................................................... 10

   C.  Arbitrability of Statutory Claims ................................................................... 12

IV.     Application of Law to Facts ............................................................................... 13

   A.  Valid Arbitration Agreement .......................................................................... 13

       1.   Consent to Arbitrate .................................................................................. 13

       2.   Venue and Unconscionability .................................................................... 15

           a)   Venue ..................................................................................................... 15

           b)   Unconscionability .................................................................................. 16

   B.  Arbitrability of FLSA Claims ......................................................................... 18

       1.   FLSA Claims are Arbitrable ...................................................................... 18

       2.   Impact of *Cheeks v. Freeport Pancake House* ......................................... 21

   C.  Scope of Arbitration Agreement ..................................................................... 22

V.   Conclusion ................................................................................................................... 23

## I.     Introduction

This case asks the question whether the court can sever unconscionable portions of an arbitration agreement with respect to venue and assessments of legal fees and costs and then order arbitration under the purged agreement.   This memorandum and order supports an affirmative answer.

Plaintiff Melody Bynum initiated this action against defendant Maplebear Inc., doing business as Instacart ("Instacart"), on October 30, 2015.   Alleged is that she was misclassified as an independent contractor and was not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").   *See generally* Compl., Oct. 30, 2015, ECF No. 1 ("Compl.").

On December 15, 2015, defendant moved to compel arbitration.   *See* Notice of Def.'s Mot. to Compel Arbitration, Dec. 15, 2015, ECF No. 10.   It argues that there is a valid arbitration agreement between the parties which requires plaintiff to resolve her wage claims through binding arbitration administered by JAMS (a national private organization providing arbitration services).   *See generally* Mem. of Law in Supp. of Def.'s Mot. to Compel Arbitration, Dec. 15, 2015, ECF No. 13 ("Def.'s Mem.").

Plaintiff opposes the motion.   She contends that FLSA claims are not arbitrable.   She seeks additional time to complete discovery on whether there was a valid arbitration agreement.   *See generally* Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Compel Arbitration, Jan. 5, 2016, ECF No. 29 ("Pl.'s Mem.").

An evidentiary hearing was conducted on February 8, 2016.   *See* Hr'g Tr., Feb. 8, 2016 ("Hr'g Tr.").   Following the parties' stipulation to sever the arbitration agreement's venue and fee-

related clauses, defendant's motion to compel was orally granted.   Federal law requires enforcement of valid agreements to arbitrate.  Without the objectionable venue and fee provisions, the arbitration agreement entered into between the parties is valid.

Plaintiff's testimony as well as the available documentation shows that she received, read and signed the employment contract, which included an agreement to arbitrate.  Plaintiff has not argued that she did not understand what she read, or that she did not provide the signature on the contract.  She had a reasonable opportunity to examine the arbitration agreement and understand it; there was no overreaching by defendant in presenting the arbitration clause to her.

Plaintiff's dispute over wages and the terms of her employment falls within the broad scope of the arbitration agreement.  For the reasons stated on the record and in this memorandum, the case is stayed pending arbitration in New York in accordance with section 3 of the Federal Arbitration Act ("FAA").

## II.   Factual and Procedural Background

### A.   Parties

#### 1.  Defendant Instacart

Instacart is a technology company founded in 2012 and headquartered in San Francisco, California.  Decl. of Heather Wake in Supp. of Def.'s Mot. to Compel Arbitration, Dec. 15, 2015, ECF No. 11 ("Wake Decl."), at ¶ 2.  Through the use of a "communications and logistics platform," Instacart "facilitate[s] connections between customers who wish to purchase grocery items and individuals who are willing to shop for the groceries and/or deliver the groceries to the customers (called 'Personal Shoppers')."  *Id.* at ¶ 3.  The Instacart platform is used in several cities including San Francisco, Denver, Philadelphia, and New York.  *Id.* at ¶ 5.  Instacart has operated in New York since March 2014.  *Id.*

Customers can create a user account with Instacart and place an online order for groceries from retail stores such as Safeway, PETCO, Costco, Whole Foods Market, and others. *Id.* at ¶ 6. They can also specify whether they want the groceries delivered and the time for delivery. *Id.* Instacart's proprietary communications and logistics technology then connects customers with Personal Shoppers, who are tasked with completing the order. *Id.* at ¶ 7.

### 2. Plaintiff Melody Bynum

Plaintiff Melody Bynum is a resident of Queens County, New York.  Compl. at ¶ 7. According to the complaint, she worked for defendant as a Personal Shopper from October 2014 to on or about October 7, 2015, performing delivery work within New York. *Id.* at ¶¶ 11-12.

### B.  Agreement between Bynum and Instacart

Plaintiff entered into an Independent Contractor Agreement ("Agreement") with Instacart on October 15, 2014, after applying for the position of Personal Shopper through the Instacart website.  Wake Decl. at ¶¶ 9, 12, Ex. A.

### 1. Application Process

In order to become a Personal Shopper, an applicant clicks on a link available on the front page of the Instacart website which says "Become a Shopper." *Id.* at ¶ 8.  Clicking on the "Become a Shopper" link takes the applicant to the application section of Instacart's website.  The application includes a description of a Personal Shopper's expected tasks (purchasing or delivering groceries, or both), required qualifications, an overview of the application process, and a link that says "Apply Now!" to begin the application. *Id.*  Each applicant is required to electronically sign an Independent Contractor Agreement as part of his or her application. *Id.* at ¶ 9, Ex. A.

4

### 2. HelloSign

HelloSign, an electronic signature service, manages Instacart's Independent Contractor Agreements with Personal Shoppers. *Id.* at ¶ 10. According to defendant, HelloSign uses IP addresses and other identifying data to maintain a time-stamped audit trail that tracks when each Personal Shopper applicant receives, views, and submits each Agreement. *Id.* An applicant is permitted to electronically sign the Agreement after passing various security measures. *Id.* HelloSign's website represents that the company complies with the U.S. Electronic Signature in Global and National Commerce Act of 2000 ("E-SIGN") regarding electronic signatures and transmissions. *Id.* at ¶ 11.

It is argued by defendant, without contradiction, that according to HelloSign's audit data, Bynum reviewed the Agreement on three separate days—October 9, 14, and 15, 2014—prior to signing it. *See id.* at Ex. A, Audit Trail. After signing the Agreement and submitting her application, plaintiff received a copy of her completed application, including the signed Agreement. *Id.* at ¶ 13. She then began performing Personal Shopper services for Instacart. *Id.* at ¶ 14.

### 3. Parties' Obligations

According to the Agreement, a Personal Shopper is engaged by Instacart to perform "[s]hopping and delivery services" for its customers. *Id.* at Ex. A, § 1 and Ex. A. Personal Shoppers are paid by Instacart pursuant to the following fee schedule:

> For each "batch" of orders picked, contractor will receive the greater of $5 (five dollars) per batch or 50 (fifty) cents per item picked. Contractor will receive an additional commission of $5 per order delivered. Contractor will also receive an additional twenty five cents per batch if he or she wears an "Instacart" shirt while picking the batch and delivering all orders comprised of that batch. The contractor will be charged $0.25/batch for use of the app.

5

*Id.* at Ex. A, § 2 and Ex. A.  Under section 2 of the Agreement, Personal Shoppers "shall be responsible for all expenses incurred or necessary in the performance of [shopping and delivery services], including but not limited to telephone, mailing, and travel expenses." *Id.* at Ex. A, § 2.

### 4.  Arbitration Agreement

The Agreement contains a section entitled "DISPUTE RESOLUTION." *See id.* at Ex. A, § 7.  Section 7.1 states:

> Following the full opportunity to discuss and negotiate over this dispute resolution procedure, the Parties agree that to the fullest extent permitted by law, any controversy, dispute or claim arising out of or relating to the Services performed by the Contractor, this Agreement, the breach, termination, interpretation, enforcement, validity, scope and applicability of any such agreement, or any allegations of discrimination or harassment on any basis under federal, state, or local law, which could otherwise be heard before any court of competent jurisdiction (a "Dispute"), shall be submitted to and determined exclusively by binding arbitration.  The Parties agree that a Dispute arising under any law that requires resort to an administrative agency may be brought before such agency as permitted by law, and that after exhaustion of administrative remedies, the Parties must pursue such Dispute through this binding arbitration procedure to the fullest extent permitted by law.

*Id.* at Ex. A, § 7.1.

The Agreement provides that arbitration shall be administered by JAMS at its San Francisco office "pursuant to its Employment Arbitration Rules and Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness . . . that are in effect when arbitration is demanded." *See id.* at Ex. A, § 7.2 and Ex. B.  The Agreement requires the parties to "equally advance all of the arbitrator's expenses and fees" and allows the arbitrator to "award fees and costs to the prevailing party." *Id.* at Ex. A, § 7.3.  Pursuant to section 7.2, "[i]n the event of any conflict between the [JAMS] Rules and this Agreement, this Agreement shall apply." *Id.* at Ex. A, § 7.2.

6

According to section 7.4 of the Agreement, California substantive law applies to the

arbitration proceedings as well as to a review of any award, except where federal law controls:

> The Parties agree that the enforceability of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 2), and acknowledge that Company's business and the nature of Contractor's services involve interstate commerce. The arbitrator shall apply California substantive law to the proceeding, except for any claim to which Federal substantive law would apply. **The Parties each expressly waive the right to a jury trial and agree that the arbitrator's award shall be final and binding on the Parties.** Any Action to review the arbitration award for legal error or to have it confirmed, corrected or vacated shall be decided pursuant to California law and shall be filed and maintained in a California state court of competent jurisdiction.

*Id.* at Ex. A, § 7.4 (bold type in original).

### 5. Severability

A severability provision is included:

> If any provision of this Agreement, or any part thereof, be declared or determined by any arbitrator or court to be illegal, invalid or unenforceable and are therefore stricken or deemed waived, the remainder of the provision and the Agreement shall nonetheless remain binding in effect, and shall be interpreted in a way to achieve the goals or intent of the stricken or waived provisions to the extent such interpretation is consistent with applicable law.

*Id.* at Ex. A, § 10.

### 6. Governing Law

Under section 13, the Agreement is to be construed in accordance with California state law.

*Id.* at Ex. A, § 13.

### C.    Defendant's Motion to Compel Arbitration

Defendant contends that the parties entered into a valid arbitration agreement under the

FAA and that the present dispute falls within its scope.  According to defendant, because every

cause of action in plaintiff's complaint arises out of, or relates to, her activities as a Personal

Shopper, plaintiff breached the arbitration agreement by initiating the instant suit. *See* Def.'s Mem., at 6-7. Defendant seeks an order: (1) compelling arbitration of plaintiff's claims; (2) dismissing or staying the present action pending completion of arbitration; and (3) staying all further proceedings pending resolution of defendant's motion to compel arbitration. *Id.* at 8.

Plaintiff argues that Congress did not intend for FLSA claims to be arbitrable and more information is needed to determine whether the parties entered into a valid electronic arbitration agreement. *See* Pl.'s Mem., at 3-10. Defendant opposes plaintiff's request for additional discovery, contending that Ms. Bynum "has failed to offer any facts or evidence . . . that the agreement is invalid or that she did not intend to be bound by it." Def.'s Reply in Supp. of Mot. to Compel Arbitration, Jan. 19, 2016, ECF No. 31 ("Def.'s Reply Mem."), at 10.

## III.    Law

### A.    Federal Arbitration Act

The question of whether the parties entered into a valid arbitration agreement is governed by the FAA. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004); *Cobarruviaz v. Maplebear, Inc.*, No. 15-CV-697, 2015 WL 6694112 (N. D. Cal., Nov. 3, 2015) (reviewing the enforceability of an identical arbitration agreement with reference to the FAA). Chapter two of the FAA provides for enforceability:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added).

8

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). The Supreme Court has interpreted the FAA broadly, finding a "liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) ("The Arbitration Act thus establishes a 'federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.'") (internal citations omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration.").

Arbitration "is a matter of contract." *AT&T Mobility LLC*, 563 U.S. at 339 (citing *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). When enforcing an arbitration agreement, "as with any other contract, the parties' intentions control." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks and citations omitted). Courts may only compel arbitration of "those disputes . . . that the parties have agreed to submit" to arbitration. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (internal quotation marks and citations omitted) (alteration in original). If the parties intended to arbitrate a dispute, courts are generally required to "enforce [such] agreements . . . according to

9

their terms." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012); *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 177 (2d Cir. 2015).

If a court is satisfied that a matter is arbitrable under an arbitration agreement, section 3 of the FAA provides for a stay of legal proceedings. 9 U.S.C. § 3; *see also Genesco*, 815 F.2d at 844. Pursuant to section 4 of the FAA, a court is to compel arbitration if there has been a "failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4; *Sinnett*, 319 F. Supp. 2d at 443 (quoting *Genesco*, 815 F.2d at 844).

In order to determine whether proceedings should be stayed or dismissed in favor of arbitration, a court must assess: "(1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Id.*; *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

### B.   Valid Arbitration Agreement

Section two of the FAA allows courts to deny enforcement of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Whether a valid arbitration agreement exists is a question of state contract law. *Sinnett*, 319 F. Supp. 2d at 443-44 ("[W]hen determining whether a contract to arbitrate has been established for the purposes of the FAA, federal courts should apply 'ordinary state-law principles that govern the formation of contracts' to decide 'whether the parties agreed to arbitrate a certain matter.'") (quoting *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law.")

(citations omitted); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law.").

According to general principles of contract law, "a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." *Genesco*, 815 F.2d at 845. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *Cobarruviaz*, 2015 WL 6694112 at *6 ("Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof.") (internal quotation marks and citations omitted).

The Agreement in the instant case provides that it shall be construed in accordance with California state law.  It is enforceable unless a contract defense generally available under California law applies, including unconscionability. *Cobarruviaz*, 2015 WL 6694112 at *6 ("[I]n California, the courts may refuse to enforce an arbitration agreement if [it] is unconscionable, as unconscionability is a general contract defense.") (citations omitted).

*Cobarruviaz* involved the same defendant as the present case, the same arbitration agreement, California law as operative, and a similar factual pattern.  Its basic analysis is adopted in the instant case.

Pursuant to § 1670.5(a) of California's Civil Code:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5(a) (West).

A contract provision is unconscionable if it was both procedurally and substantively unconscionable when made: "the core concern . . . is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Cobarruviaz*, 2015 WL 6694112 at *6 (citing *Sonic–Calabasas A, Inc. v. Moreno*, 311 P.3d 184 (Cal. 2013)) (internal quotation marks omitted); *cf. Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 391 (E.D.N.Y. 2015) (To characterize a term as unconscionable "requires a showing that the contract was both procedurally and substantively unconscionable when made—*i.e.*, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.") (internal quotation marks and citations omitted); 8 Williston on Contracts § 18:9 (4th ed. 2015) (same).

C.     **Arbitrability of Statutory Claims**

The federal policy favoring arbitration extends to the enforcement of agreements to arbitrate claims founded on statutory rights. *See Shearson/Am. Exp., Inc.*, 482 U.S. at 226 ("This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). "Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that would provide grounds for the revocation of any contract, the Arbitration Act provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Shearson/Am. Exp., Inc.*, 482 U.S. at 226 (internal quotation marks and citations omitted).

The enforceability mandate of the FAA may be overridden by a showing of a contrary congressional command—a party opposing arbitration bears the burden of demonstrating that

Congress intended to preclude a waiver of judicial remedies for the particular statutory rights at issue. *Id.*; *Gilmer*, 500 U.S. at 35 (concluding that Congress did not intend to preclude arbitration of claims arising under the Age Discrimination in Employment Act; age discrimination claim was subject to compulsory arbitration pursuant to arbitration agreement).

## IV.    Application of Law to Facts

### A.    Valid Arbitration Agreement

#### 1.  Consent to Arbitrate

Defendant contends that the parties entered into a valid arbitration agreement under the FAA and the present dispute falls within its scope. According to defendant, plaintiff reviewed and signed the Agreement, which included a binding arbitration clause. The available audit trail shows that she reviewed the Agreement on multiple dates. She then electronically signed the Agreement using HelloSign; her signature is binding and enforceable. *See* Def.'s Mem., at 11-12.

In her opposition to defendant's motion to compel, plaintiff has not challenged the validity of the arbitration agreement. Instead, she has requested more time and additional discovery to determine whether there was a valid "meeting of the minds," because the Agreement was between "[p]laintiff and a computer." Pl.'s Mem., at 9. Although the Agreement references the parties' "full opportunity to discuss and negotiate over th[e] dispute resolution procedure," plaintiff states that "it seems [the Agreement] was nothing more than an adhesion 'contract' without any negotiation over its terms." Pl.'s Mem., at 10; *see also* Wake Decl., at Ex. A, § 7. She also indicates that there are "no sworn statements, explanations, or other discovery from Hellosign" regarding whether its processes comply with the relevant electronic signature requirements and argues that "there is no reliable evidence that" plaintiff actually received the JAMS rules and conditions. Pl.'s Mem., at 9.

13

While the contract signed by plaintiff appears to be one of adhesion—it was offered on a take-it-or-leave-it basis and, despite language suggesting otherwise, there does not appear to have been any actual opportunity to discuss or negotiate its terms—plaintiff did have a full opportunity to review its contents.  Ms. Bynum testified that the full employment contract was sent to her personal email address and that she "probably read most of it," although she did not presently "recall the arbitration section."  Hr'g Tr., at 15:13-21.  The arbitration clause was included in the employment contract.  In order to get to the signature page, plaintiff had to scroll through the entire contract, including the arbitration clause:

> MS. WAKE:  [The contract] is a multipage document, so they would have to go through the document and the arbitration clause is within the document.  It's not on the first page.
>
> THE COURT:  Can you skip the agreement and go to signing?
>
> MS. WAKE:  No, you have to scroll down through the entire agreement to get to the signature page.
>
> THE COURT:  Is that right?
>
> THE PLAINTIFF:  Like I said, I don't recall exactly.
>
> THE COURT:  But you don't disagree that you had the opportunity and had to scroll down to get to the signing page?
>
> THE PLAINTIFF:  Well, you can, in any document, you can scroll through the entire document and just skip whatever you want if you choose to.
>
> […]
>
> THE COURT:  But there was no shortcut, you had to scroll through?
>
> THE PLAINTIFF:  I believe so, yeah.

*Id.* at 18:8-19:1; *contra Berkson*, 97 F. Supp. 3d at 403-04 (finding that plaintiff Berkson was not aware of the terms he was binding himself to when the relevant terms of use were made available through a hyperlink near a sign-in button; Gogo did not have a practice of emailing or mailing the contents of the "terms of use" to its customers and plaintiff Berkson never had a hard copy in his possession to refer to).

Plaintiff does not claim that there was any language or educational barrier that stopped her from understanding the contract. *See* Hr'g Tr., at 19:5-10. After having the opportunity to read and review it, plaintiff signed the Agreement. Absent any showing of fraud, duress, or other wrongful conduct, the Agreement, including its arbitration clause, is valid and binding on the parties.

### 2. Venue and Unconscionability

Although plaintiff is a resident of Queens, New York and performed services for defendant within New York, the arbitration agreement provides that arbitration shall be conducted at the JAMS offices in San Francisco, California. *See* Wake Decl., at Ex. A, § 7.2. It also provides that the parties are to equally advance fees and costs and allows the arbitrator to award legal fees and costs to the prevailing party. *Id.* at Ex. A, § 7.3. A worker such as plaintiff would be forced out of the game by fear of a financial cost that her opponent could easily absorb.

While plaintiff has not claimed—as she might have under *Cobarruviaz*—that the cost of arbitration would render the arbitration agreement invalid, she has argued that the provisions relating to venue and fees would force her to "pay more to arbitrate her claims than her claims are worth." Pl.'s Mem., at 4.

#### a) Venue

Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to an appropriate venue not unduly burdensome to the parties and witnesses. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). To the extent that the arbitration clause provides for arbitration in San Francisco—a city never visited by plaintiff and thousands of miles away from

15

where she resides and where she performed services for defendant pursuant to the Agreement—it violates applicable federal policy in regards to venue and is invalid. The provision is particularly inappropriate in the present case since the defendant and JAMS are present in New York.

At the February 8, 2016 hearing, the parties stipulated that the provision relating to choice of venue is severable. They agreed that venue is appropriate in New York rather than in California. *See* Hr'g Tr., at 5:22-24, 6:6-10. The contract clause requiring arbitration to be carried out in San Francisco is, accordingly, stricken, in light of the parties' stipulation. If an arbitration goes forward, it is to be carried out by JAMS in New York where it has an office. *See id.*

### b) Unconscionability

The provisions requiring the parties to equally advance fees and allowing the arbitrator to award legal fees and costs to the prevailing party are unconscionable under applicable California law. The contract provides that California law governs. *See* Wake Decl., at Ex. A, § 13. Identical clauses were deemed unconscionable and severed by the court in *Cobarruviaz*. *See Cobarruviaz,* 2015 WL 6694112 at *7-8. There, the Northern District of California considered an arbitration agreement like the one presently at issue, except that venue was not a concern in that case since the plaintiff brought the suit in San Francisco. *See id.* at *7 (finding that the forum selection clause requiring arbitration in San Francisco was not substantively unconscionable and noting that "[w]hile a different calculus should arguably apply to an employment dispute . . . wherein an employee may claim undue burden resulting from a distant forum, here, [p]laintiffs have chosen to file the instant lawsuit in San Francisco.").

The arbitration agreement's fee-related clauses conflict with the otherwise applicable JAMS Minimum Standards which provide, in relevant part:

> An employee's access to arbitration must not be precluded by the
> employee's inability to pay any costs or by the location of the

> arbitration. The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.

Wake Decl., at Ex. A, Ex. B, Minimum Standard 6. These Minimum Standards "apply to arbitrations based on pre-dispute agreements that are required as a condition of employment." *Id.* at Ex. A, Ex. B. They provide that "JAMS will administer mandatory arbitrations in employment cases *only if* the arbitration provision complies with JAMS Minimum Standards." *Id.* (emphasis added). Yet, section 7.2 of the arbitration agreement in the instant case provides that "[i]n the event of any conflict between the [JAMS] Rules and this Agreement, this Agreement shall apply." *Id.* at Ex. A, § 7.2.

In *Cobarruviaz*—a similar FLSA suit brought against the same defendant as in the instant case—the district court for the Northern District of California ordered defendant to file an arbitration demand with JAMS to determine whether JAMS would be willing to accept the arbitration. JAMS replied that "the arbitration agreement as written *does not comply* with the Minimum Standards. Therefore, JAMS has determined that it *will administer the cases only if the parties, by agreement or waiver, amend the arbitration agreement* to comply with the Minimum Standards." *Cobarruviaz*, 2015 WL 6694112 at *3 (emphasis added). In that case, the plaintiffs did not agree to modify or waive the offending contract terms. *Id.* The court severed the conflicting fee-related provisions as unconscionable and only then did it compel the parties to arbitrate. *See id.* at *8 ("Both the FAA and California law favor severance when the contract is not 'permeated' with unconscionability. No such permeation exists here. Moreover, there is a severance clause in the Agreements. The offending provisions may easily be grammatically severed without reforming the Agreements.").

17

In the instant case, the parties agreed to strike the two conflicting fee-related provisions:

> MR. BERKOWITZ: I would certainly agree . . . Instacart intends to pay the arbitrator's fees, and I certainly agree with the striking of the fee splitting provision. The prevailing party provision, we have no objection to it being struck.
>
> THE COURT: All right. So those they'll strike. Will you agree to striking those two, if I order arbitration?
>
> MR. HASSAN: Yeah, I believe they're invalid, Your Honor. They should be stricken.
>
> THE COURT: All right. So those are stricken by stipulation.

Hr'g Tr., at 8:2-14.

Without the objectionable venue, fee splitting and fee sharing clauses, the arbitration agreement is valid and enforceable.

### B.    Arbitrability of FLSA Claims

Plaintiff in the present case contends that FLSA claims are non-arbitrable as a matter of law. She argues that: (1) Congress intended FLSA claims to be non-arbitrable; and (2) FLSA claims are not subject to arbitration under the decision of the Court of Appeals for the Second Circuit in *Cheeks v. Freeport Pancake House Inc.*, 796 F.3d 199 (2d Cir. 2015). *See* Pl.'s Mem., at 3-9. For the reasons stated below, plaintiff's claims are without merit.

### 1.   FLSA Claims are Arbitrable

Plaintiff rests on the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) in support of her argument that FLSA claims are not arbitrable. In that case, the Court held that petitioners' minimum wage claims under the FLSA were not barred by the prior submission of the petitioners' grievances to a joint committee pursuant to the provisions of a collective bargaining agreement. The Court differentiated between collective rights arising

under a collective bargaining agreement and individual rights under a federal statute. *See Barrentine*, 450 U.S. at 737-46.

*Barrentine* has been distinguished from cases involving the arbitrability of individual statutory claims. *See, e.g., Gilmer*, 500 U.S. 20 at 33-35. *First, Barrentine* was not decided under the FAA so the statute's "liberal policy favoring arbitration" was not at issue. *See id.* at 35. *Second, Barrentine* involved arbitration in the context of a collective bargaining agreement, where the claimants were represented by their unions; the relevant concern was the tension between collective representation and individual statutory rights. *Id.* The Court did not rule on whether individual FLSA claims could be arbitrated pursuant to a private agreement between an individual employee and employer.

Repeatedly it has been found that individual agreements to arbitrate FLSA claims are enforceable. For example, in *Ciago v. Ameriquest Mortgage Co.* the District Court for the Southern District of New York explained:

> Plaintiff argues that the Arbitration Agreement is invalid because "an employee cannot be held to have waived a judicial forum as guaranteed by the FLSA." Plaintiff does not, however, point to anything in the text of the FLSA that indicates Congress intended to preclude compulsory arbitration of FLSA claims nor does she establish that there is an "'inherent conflict' between arbitration and the" policies underlying the FLSA. In *Gilmer* the Supreme Court held that claims under the Age Discrimination and Employment Act ("ADEA") may be subject to compulsory arbitration. . . . [B]ecause of the similar remedial purpose and enforcement mechanisms shared by the ADEA and FLSA, the reasoning in *Gilmer* dictates that claims under the FLSA may also be subject to compulsory arbitration provisions.
>
> Plaintiff cites *Barrentine v. Arkansas–Best Freight*, 450 U.S. 728, 101 S. Ct. 1437, 67 L.Ed.2d 641 (1981), and *Tran v. Tran*, 54 F.3d 115 (2d Cir. 1995), in support of her contention that FLSA claims are nonarbitrable. In these cases, the Supreme Court and the Second Circuit held that an arbitration provision in a collective bargaining agreement did not preclude an individual union member from bringing a claim against his employer under the FLSA.

> *The present case involves an individual agreement to arbitrate, not a provision within a collective bargaining agreement; it is, therefore, distinguishable from* Barrentine *and* Tran *because different prudential considerations apply to collective bargaining. Specifically, the Court in* Barrentine *appeared concerned with the fact that the union might not pursue the individual member's FLSA claims through the arbitration process for strategic reasons. This consideration is simply not applicable here. Accordingly, we conclude that* Congress has not evinced an intention to preclude arbitration of FLSA claims.

*Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003) (citations omitted; emphasis added); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (distinguishing *Barrentine* in a case involving an individual agreement to arbitrate because *Barrentine* "was limited to the case of collective-bargaining arbitration and was thus rooted in substantive concerns that simply do not apply" out of the collective bargaining context); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (finding that an employee can waive his or her ability to proceed collectively under the FLSA in an arbitration agreement); *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 824 (8th Cir. 2003) (compelling arbitration of FLSA claims); *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71 (S.D.N.Y. 2015) (same); *LaVoice v. UBS Fin. Servs., Inc.*, No. 11-CV-2308, 2012 WL 124590, at *9 (S.D.N.Y. Jan. 13, 2012) (same); *Steele v. L.F. Rothschild & Co., Inc.*, 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (staying FLSA suit pending arbitration).

*Sutherland* is the leading Second Circuit case addressing the arbitrability of FLSA claims. Both sides rely upon it. In that case the question was whether the FLSA barred the waiver of collective action through individual agreements to arbitrate; plaintiff argued that enforcing the arbitration provision in her employment contract would prevent her from "effectively vindicating" her rights under the FLSA and NYLL, because she would not be allowed to pursue the claims collectively through litigation. *See Sutherland*, 726 F.3d at 294-295. The Court of Appeals for the Second Circuit reiterated the liberal federal policy in favor of arbitration. *Id.* at 295. It found,

following the Supreme Court's decision in *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013), that the plaintiff's argument "that proceeding individually in arbitration would be 'prohibitively expensive' is not a sufficient basis to invalidate the class-action waiver provision at issue." *Id.* at 299.

The decisions of the Supreme Court, as well as of courts both within and outside this circuit, indicate that valid arbitration agreements subjecting individual FLSA claims to arbitration must be enforced in accordance with the FAA.  The Supreme Court has declared: "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'"  *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc.*, 473 U.S. 614, 628 (1985)); *see also Circuit City Stores, Inc.*, 532 U.S. at 123.  Where the arbitration procedure provided would be unfair to the worker, the court may, as in this case, take into account protective equities and law due to the plaintiff under the FLSA.

### 2.  Impact of *Cheeks v. Freeport Pancake House*

Plaintiff argues that the decision of the Court of Appeals for the Second Circuit in *Cheeks v. Freeport Pankcake House Inc.*—holding that FLSA claims cannot be settled without the approval of a court or the United States Department of Labor—lends support to its claim that FLSA claims are not arbitrable because: (1) an arbitrator is not obliged to protect the "public's interest in FLSA compliance" but is "only obligated to serve the private interests of the parties based on their arbitration agreement;" (2) "the costs of arbitration offset[] and therefore result[] in waiver of Plaintiff's FLSA protected wages;" and (3) arbitration of FLSA claims should not be allowed in this case "because of the confidentiality of the arbitration proceedings under JAMS' rules." Pl.'s Mem., at 7-8.

In *Cheeks*, the Second Circuit addressed the question in an interlocutory appeal of whether parties may settle FLSA claims with prejudice without court approval or Department of Labor supervision. *Cheeks*, 796 F.3d at 201. The court concluded that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id.* at 206. No question regarding the arbitrability of FLSA claims was raised. Plaintiff's reference to the Second Circuit's decision in *Cheeks* is therefore misplaced. That decision does not bear on the arbitrability of FLSA claims.

### C.    Scope of Arbitration Agreement

The remaining question to be decided is whether plaintiff's claims fall within the scope of the arbitration agreement. According to defendant, all of plaintiff's causes of action—misclassification as a non-employee and failure to pay overtime wages under the FLSA and NYLL—arise out of, or relate to, the "Services performed by the Contractor" and are covered by the Agreement's arbitration clause. "Services" is defined in the Agreement as "Shopping and delivery services for customers of Company." Wake Decl., at Ex. A, § 1 and Ex. A.

Plaintiff cannot argue that her FLSA claims do not fall within the scope of the Agreement's arbitration clause. The arbitration agreement includes broad language, stating that "the Parties agree that to the fullest extent permitted by law, any controversy, dispute, or claim arising out of or relating to the Services performed by the Contractors . . . shall be submitted to arbitration." *Id.* at Ex. A, § 7.1.

The present dispute centers on whether plaintiff should be deemed an employee of defendant rather than an independent contractor, and whether she worked overtime hours and is entitled to overtime wages under the FLSA and NYLL. The dispute "arises out of" or relates to the services performed by plaintiff; it requires inquiring into the nature of plaintiff's employment

22

and whether she was afforded proper compensation.  Plaintiff's claims fall within the scope of the arbitration agreement.

## V.      Conclusion

Plaintiff had a reasonable opportunity to examine and understand the arbitration clause included in the employment contract that she reviewed and signed.  The arbitration agreement's provisions on venue, fee sharing, and fee splitting are not enforceable and are severed pursuant to the parties' stipulation.  Without the objectionable clauses, the arbitration agreement is valid and enforceable.  There is no merit to plaintiff's claim that FLSA claims are *per se* non-arbitrable, and the present dispute falls within the broad language of the arbitration agreement.

Defendant's motion to compel arbitration is granted.  There appears to be no reason for new discovery on the issue of arbitrability.  The case is stayed pending arbitration pursuant to section 3 of the FAA.

Defendant shall promptly file an arbitration demand with JAMS in New York.  If JAMS is unwilling to accept the arbitration in New York for any reason, either party shall by letter notify the court.  The court will then set a trial date.  The parties and JAMS are requested to take appropriate prompt steps to determine whether the arbitration can go forward.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: February 12, 2016
Brooklyn, New York

23

**PROOF OF SERVICE**

I am employed in the City & County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On February 17, 2016, I served the following document(s):

**DEMAND FOR ARBITRATION BEFORE JAMS**

☑ by regular **UNITED STATES MAIL** by placing a copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

Abdul Hassan                              Tel:   718-740-1000
Abdul Hassan Law Group, PLLC              Fax:   718-740-2000
215-28 Hillside Avenue                    Email: abdul@abdulhassan.com
Queens Village, NY  11427

Executed on February 17, 2016, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_ROSEANN CIRELLI_
ROSEANN CIRELLI

1031643.01

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2016, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Abdul Hassan                              Attorneys for Plaintiff
Abdul Hassan Law Group, PLLC              Melody Bynum
215-28 Hillside Avenue
Queens Village, NY  11427
Tel:     718-740-1000
Fax:     718-740-2000
Email:  abdul@abdulhassan.com


_s/Roseann Cirelli_____
ROSEANN CIRELLI

1020581