1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
 2    - - - - - - - - - - - - - - - X
                                      :
 3      BYNUM,                        :   15-CV-6263 (JBW)
                                      :
 4              Plaintiff,            :
                                      :
 5                                    :   United States Courthouse
          -against-                   :   Brooklyn, New York
 6                                    :
                                      :
 7                                    :   February 8, 2016
        MAPLEBEAR INC.,               :   10:00 a.m.
 8                                    :
                Defendant.            :
 9    - - - - - - - - - - - - - - - X
10
                  TRANSCRIPT OF CIVIL CAUSE FOR MOTION
11              BEFORE THE HONORABLE JACK B. WEINSTEIN
                  UNITED STATES DISTRICT JUDGE
12
13                    A P P E A R A N C E S:

14    For the Plaintiff:    ABDUL HASSAN LAW GROUP, PLLC
                            215-28 Hillside Avenue
                            Queens Village, New York 11427
15                          BY:  ABDUL K. HASSAN, ESQ., ESQ.

16
      For THE PLAINTIFF:    KEKER & VAN NEST LLP
17                          63 Battery Street
                            San Francisco, California 94111-1809
18                          BY:  BENJAMIN W. BERKOWITZ, ESQ.

19                          REAVIS PARENT LEHRER LLP
                            41 Madison Avenue
20                          41st Floor
                            New York, New York 10010
21              BY:         ALICE K. JUMP, ESQ.

22    Court Reporter:       Marie Foley, RMR, CRR
                            Official Court Reporter
23                           Telephone: (718) 613-2596
                             Facsimile: (718) 613-2648
24                           E-mail:  Marie_Foley@nyed.uscourts.gov

25    Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
```

*Proceedings*                                                    2

1              (In open court.)

2              COURTROOM DEPUTY:  All rise.   Civil cause for

3     motion, Bynum versus Maplebear Inc.

4              Counsel, note your appearances, please.  For the

5     plaintiff.

6              MR. HASSAN:  Your Honor, Mr. Abdul Hassan for the

7     plaintiff.  Good morning.

8              THE COURT:  Good morning.

9              And you are?

10             THE PLAINTIFF:  I'm Melody Bynum.

11             MR. BERKOWITZ:  Good morning, Your Honor.  Ben

12    Berkowitz from Keker and Van Nest for the defendant.  With me

13    is Heather Wake, who is a senior manager at the client.

14             THE COURT:  Good morning.

15             MS. JUMP:  My name is Alice Jump, I'm local counsel

16    with Reavis Parent Lehrer for the defendant.

17             THE COURT:  Thank you.

18             Is it your motion?

19             MR. BERKOWITZ:  This is our motion, Your Honor.

20             THE COURT:  I'll be happy to hear from you.

21             MR. BERKOWITZ:  Thank you, Your Honor.

22             As the U.S. Supreme Court has said, there is a

23    strong presumption in favor of arbitration of disputes under

24    the FAA.

25             THE COURT:  I want to swear the plaintiff and

*Proceedings*                                                              3

1   representative of the defendant, please, before the argument

2   so I can interject questions as needed.

3            COURTROOM DEPUTY:  Stand and raise your right hand.

4            (Melody Bynum sworn.)

5            COURTROOM DEPUTY:  Please state your name.

6            THE PLAINTIFF:  Melody Bynum.

7            COURTROOM DEPUTY:  Be seated.

8            Raise your right hand.

9            (Heather Wake sworn.)

10           COURTROOM DEPUTY:  Restate your name.

11           MS. WAKE:  Heather Wake.

12           THE COURT:  Yes.

13           MR. BERKOWITZ:  Thank you, Your Honor.

14           So, under the Supreme Court precedent, arbitration

15   agreements are governed -- that are governed by the FAA are

16   presumed valid and enforceable, and the presumption of

17   validity reflects Congress's intent that under the FAA there

18   should be a, quote, liberal federal policy favoring

19   arbitration agreements and recognizing the, quote, fundamental

20   principle that arbitration is a matter of contract.

21           As the Supreme Court said in the Dean Witter case,

22   the FAA, quote, the FAA leaves no place for the exercise of

23   discretion by district court, but instead mandates the

24   district court shall direct the parties to proceed to

25   arbitration on issues as to which an arbitration agreement has

*Proceedings*                                                    4

1   been signed.

2         Under the FAA, it is the plaintiff's burden, the

3   plaintiff who bears the burden in any challenge to the

4   validity and enforceability of an agreement to arbitrate, and

5   that challenge must be held to the same rigorous and demanding

6   standards as would apply to the challenge --

7         THE COURT:  Well, that's boilerplate.  I'm going to

8   apply that law, of course.

9         Where were you working, madam?

10        THE PLAINTIFF:  In the state of New York.

11        THE COURT:  Did you ever work in California?

12        THE PLAINTIFF:  I've never even visited California.

13        THE COURT:  Where did you sign the agreement?

14        THE PLAINTIFF:  In New York where I reside.

15        THE COURT:  Why shouldn't the arbitration take place

16  in New York?

17        MR. BERKOWITZ:  Your Honor, we agree the arbitration

18  should take place in New York, and that's what the -- so if

19  the Court --

20        THE COURT:  Well, will the arbitral organization

21  arbitrate in New York?

22        MR. BERKOWITZ:  Yes, Your Honor.  It's a JAMS

23  arbitration.  JAMS has an office, I believe it's in Times

24  Square.

25        THE COURT:  I know they have an office in New York,

1    but will they agree to arbitrate under this agreement in New

2    York?

3              MR. BERKOWITZ:  Yes.

4              THE COURT:  How do you know?

5              MR. BERKOWITZ:  So, standard number 6 of their

6    minimum standards, which is part of our contract, reads,

7    standard number 6 says:  "Costs and location must not preclude

8    access to arbitration."

9              These are procedural protections that apply to any

10   arbitration that proceeds under the JAMS employment

11   arbitration rules which are designated in this contract, and

12   these are standards that are attached to the contract that Ms.

13   Bynum signed.  They provide, quote, an employee's access to

14   arbitration must not be precluded by the employee's inability

15   to pay any costs or by the location of the arbitration.  The

16   only fee that an employee may be required to pay is JAMS

17   initial case management fees.  All other costs must be bourne

18   by the company, including any additional JAMS case management

19   fees.

20             THE COURT:  Well, let's stick to venue first.

21             MR. BERKOWITZ:  So, in terms of --

22             THE COURT:  Are you agreeing and stipulating that

23   venue is separable and that venue is properly in New York?

24             MR. BERKOWITZ:  Agreed, Your Honor.

25             THE COURT:  What's the view of the plaintiff?

*Proceedings* 6

1   Assuming we arbitrate.  I haven't decided that.

2           MR. BERKOWITZ:  Well, Your Honor, the only thing I

3   had access to that their motion is based on is this purported

4   contract and it does say California.  I don't know too much

5   about --

6           THE COURT:  Excuse me.  Please answer my question.

7           Will you stipulate that if arbitration is ordered

8   that it should be in New York and that's severable?

9           MR. HASSAN:  Yes, Your Honor.  If that's Your

10  Honor's ruling initially, then I would prefer it in New York.

11          THE COURT:  All right.  Then I find that that, in

12  any event, would be required under the policy of change of

13  venue, it's now in the federal court, 28 U.S. Code 1404 which

14  allows the Court to transfer a case to an appropriate venue

15  not burdensome to the parties and witnesses.  And I'm ruling

16  that since this is now in the federal court, that statute

17  applies with respect to venue, and if the case had to be

18  arbitrated in California it would violate federal policy and

19  would be invalid.

20          So we've covered the venue problem, correct?

21          MR. HASSAN:  Yes, Your Honor.

22          THE COURT:  And it's so stipulated.

23          And, I assume that JAMS will take the case in New

24  York.  If JAMS comes back and says we won't take it on a

25  transfer of venue, effectively, then it comes back because the

*Proceedings*                                                    7

1   arbitration fails on impossibility as well as

2   unconscionability, correct?

3         MR. BERKOWITZ:  First of all, I believe JAMS will

4   take it and rule --

5         THE COURT:  I know, but I'm laying this out as the

6   hypothetical.

7         MR. BERKOWITZ:  If JAMS, and I don't think they

8   will, but if for some reason JAMS were to decline to take the

9   case, my understanding of how this works under the FAA is it

10  would come back to this court.  The court would then need to

11  determine whether the designation of JAMS as the forum was,

12  quote/unquote, integral to the contract.

13        THE COURT:  Well, I'm going to find it's integral.

14  I find that the JAMS designation was integral.  So if JAMS

15  won't take it, I won't apply the arbitration clause.  That's

16  the venue problem.

17        Now we have the problem which is dealt with at

18  considerable length and in a way that I find appropriate by

19  Judge Chen in the Northern District of California.  And that

20  brings us to the fee splitting and the fee shifting provision

21  in the agreement, which under California law is unconscionable

22  and is probably invalid under JAMS minimum standards.

23        Since the parties have agreed that California law

24  applies, the unconscionability rulings of the California

25  courts apply and these two provisions are unconscionable

*Proceedings*                                                        8

1   unless they're stricken.

2        MR. BERKOWITZ:  I would certainly agree -- well,

3   first of all, Your Honor, as we've informed Mr. Hassan,

4   Instacart intends to pay the arbitrator's fees, and I

5   certainly agree with the striking of the fee splitting

6   provision.  The prevailing party provision, we have no

7   objection to it being struck.

8        THE COURT:  All right.  So those they'll strike.

9        Will you agree to striking those two, if I order

10  arbitration?

11       MR. HASSAN:  Yeah, I believe they're invalid, Your

12  Honor.  They should be stricken.

13       THE COURT:  All right.  So those are stricken by

14  stipulation.

15       Now, then the question is will JAMS take it with

16  these three stripping orders.  What I would propose to do --

17       MR. BERKOWITZ:  Yes, Your Honor, if I could offer

18  one point?

19       THE COURT:  Yes.

20       MR. BERKOWITZ:  So, this case, we know that JAMS

21  took this arbitration, for example.

22       THE COURT:  That may be true.

23       MR. BERKOWITZ:  Okay.

24       THE COURT:  I'm telling you I'm assuming they're

25  going to do it.  I'm following the court's order in this case

1  which I find appropriate and proper.  It doesn't rule here,

2  but it is a ruling that I find persuasive, and that's

3  Cobarruviaz v. Maplebear Inc., the same defendant as in this

4  case.  It's 2015 WL 6694112, a 2015 case, as I said, by Judge

5  Chen in the Northern District of California.  So I'm following

6  that case, but it's slightly different on the facts because in

7  that case, the plaintiff brought the case in California and

8  therefore the venue provision was not in violation of, as I'm

9  now holding, the theory of venue in the ruling venue provision

10  1404 of Title 18.

11         So, that's what I would propose to do, and I take it

12  the defendant accepts whatever stipulations are required to do

13  that.

14         MR. BERKOWITZ:  Correct, Your Honor.

15         THE COURT:  What's the plaintiff's view?

16         MR. HASSAN:  Well, Your Honor, we believe that

17  arbitration should not be compelled in FLSA cases.  We go back

18  to the high court in Barrentine where Congress intended to

19  give individual employees the right to bring their minimum

20  wage claims under the FLSA in court and because these

21  congressionally granted FLSA rights are best protected in a

22  judicial rather than an arbitral forum, we hold that a

23  petitioner's claim is not barred by prior submission to

24  arbitration.  And the court then prior to that looked at the

25  remedial section, 29 USC 216(b), and it says this is a section

*Proceedings*                                                10

1   that says you bring the case in court if no other forum is

2   mentioned or specified and so on.

3           So, whether or not we agree with that, I believe the

4   court here, the Supreme Court was interpreting the statute as

5   meaning that FLSA claims because of a special public policy

6   and for remedial purposes under the statute cannot be

7   compelled into arbitration that it's an unfettered right to

8   bring these claims in federal court.

9           THE COURT:  But we've had a number of these claims

10  made subject to arbitration, haven't we?

11          MR. HASSAN:  We've had lower court decisions, but I

12  don't think those lower court decisions considered these

13  arguments and looked at these cases.  The only Second Circuit

14  decision, binding one, related to this subject was a

15  Sutherland case, and in Sutherland no one in that case was

16  interested in pursuing the case on an individual basis.  The

17  lawyers and everyone wanted it to be a class action because it

18  was going to be big.  So, the issue, as the court set out in

19  Sutherland was the question presented in this appeal is

20  whether an employee can invalidate a class action, waive a

21  provision in an arbitration agreement.  So that was the

22  question.  Everyone was quite happy to assume that, or didn't

23  even bother to address, whether or not the individual claim

24  could go to arbitration.

25          I think after Sutherland, I think the chief decision

1  dramatically reaffirmed the special public purpose and policy

2  under the FLSA.  I mean, I was a losing lawyer in Cheeks, but

3  when I see these cases, I tend to agree with the Second

4  Circuit that there is a strong public policy here that should

5  be protected.  That these employees cannot, whether or not the

6  defendant is paid, the public's interest in the statute cannot

7  be protected in arbitration.

8          As you know, the standard for overturning

9  arbitration decision, you have to show fraud or something like

10 that.  Even if the arbitrator's wrong in applying the law and

11 so on, it still will not be reversed or overturned by a

12 district court.  So you cannot effectively, the plaintiff

13 cannot effectively vindicate her rights in that forum and the

14 public's interest in the FLSA.  This is one of the main things

15 that the Second Circuit and all these courts said require

16 approval, which now is all of them after Cheeks, cite as

17 justifying judicial oversight and so on in these cases.

18         So, I would kindly urge the court to hold --

19 especially because of the controlling high court precedent,

20 when the Second Circuit interpreted Barrentine, it said that

21 it -- it interpreted Barrentine as finding congressional

22 intent, intent, that the Fair Labor Standards Act claims be

23 nonarbitrable because of conflict between arbitration and the

24 FLSA's purposes.  So, the Supreme Court in Barrentine

25 identified a conflict.  They said look, there is a strong

1  public policy in favor of arbitration, but there's a stronger

2  public policy on the line in FLSA and that conflict, we will

3  resolve it in favor of the FLSA.  There's been no subsequent

4  high court decision to call Barrentine in doubt or to overrule

5  it, and lower courts cannot obviously overturn the Supreme

6  Court, and there is no Second Circuit case even addressing

7  Barrentine, and the ones that did, actually said the intent

8  was to choose the FLSA in court over arbitration.

9           So, our position would be that the court should find

10  that FLSA claims are not arbitrable.  Thank you.

11           THE COURT:  It's a very powerful argument and I tend

12  to agree with you, but I'm not sure the Supreme Court hasn't

13  gone the other way with respect to arbitration.

14           What's your view?

15           MR. BERKOWITZ:  Well, I think the Supreme Court has

16  gone the other way with respect to arbitration.  I think

17  what's critical is that the Barrentine case is not an

18  arbitration case under the FAA.  What the Barrentine was about

19  was a collective bargaining agreement.  This was a case where

20  the plaintiff hadn't signed any arbitration agreement.  The

21  union had signed an arbitration agreement with the lawyer

22  through the collective bargaining agreement process.  That

23  arbitration agreement didn't permit or provide for the

24  vindication of the individual employee's rights, and so the

25  individual employee would have been left without any forum at

*Proceedings*                                                        13

1   all, you know, arbitration or anything.  So there wasn't -- it

2   simply wasn't an FAA case.  It's completely inapposite on its

3   facts.

4          The Second Circuit actually has ruled on this issue.

5   So, I mean, the Sutherland case, while it's true that involved

6   arbitration agreement, that included a class action waiver,

7   the issue, the question presented in that case was whether --

8   was, you know, the court recited some of, you know, as you

9   call it, the boilerplate about there being a strong federal

10  policy in favor of the FAA, in favor of arbitration, that

11  arbitration agreements under the FAA must be enforced

12  according to their terms, et cetera, et cetera, unless, and it

13  said here and these are sort of the critical quotes from that

14  case that directly answer the question, it says arbitration --

15          THE COURT:  Page reference?

16          MR. BERKOWITZ:  This is at 726 F.3d 295 going on to

17  296 through actually really through 298.  But it says on

18  page -- at the very bottom of page 295, it says:  "Arbitration

19  agreements should be enforced according to their terms unless

20  the FAA's mandate has been overridden by a contrary

21  congressional command."

22          The court then followed, goes through a fairly

23  lengthy analysis and on the next -- at the very bottom of page

24  297 concludes that, quote:  The FLSA does not include a

25  contrary congressional command that prevents the arbitration

*Proceedings*                                                           14

1    agreement from being enforced by its terms.  And so the court

2    has asked the question in Sutherland whether the FAA is

3    preempted by the FLSA and concludes that it is not.

4            So the question, the specific question that's argued

5    by the plaintiffs in this case has been rejected by the Second

6    Circuit.

7            MR. HASSAN:  Your Honor, might I say, there's a

8    difference between a class action waiver.  The courts have

9    reasoned that the right to participate in a class action is

10   not the same as the right to overtime in the first place.

11           So, the court in Sutherland, first of all, the issue

12   here was not before them and they did not even address the

13   Barrentine case.  And in Barrentine, if I was to scroll down,

14   I would say look, the Supreme Court has said there is a

15   congressional directive in the statute that they interpreted

16   it that prefers court access over arbitration in FLSA cases.

17   There's been no subsequent high court decisions.  And FLSA

18   cases, as we know, are different.  They have special public

19   policy underlying.  The Second Circuit reaffirmed that in

20   Cheeks.

21           So, Sutherland, class action waivers are a whole

22   different beast than underlying waivers.  You can waive

23   participation in class action.  You can't waive underlying

24   FLSA rights.  So it's distinguishable, and moreover the court

25   itself in Sutherland said that was not the issue before the

*Proceedings*                                                    15

1   court.

2        I think the court should follow Barrentine as it did

3   just two years ago in the Polanco case, I think it was, and if

4   the Second Circuit decides to change its mind or the Supreme

5   Court designed to change its mind, well, then so be it at that

6   point, but right now we think the controlling law would

7   require the case stay in the district court.

8        THE COURT:  Well, as I say, I think it's a powerful

9   argument on policy and I agree with you that that should be

10  the policy, but the Supreme Court's arbitration cases are so

11  strong that I think they control.

12       So let's find out what the facts are.

13       Did you read the agreement before you signed it,

14  madam?

15       THE PLAINTIFF:  I probably read most of it.  I don't

16  recall the arbitration section of it.

17       THE COURT:  Did they hand you the contract

18  physically?

19       THE PLAINTIFF:  No.  They e-mailed it to --

20       THE COURT:  I can't hear you.

21       THE PLAINTIFF:  They e-mailed it.

22       THE COURT:  They e-mailed it to you?

23       THE PLAINTIFF:  Yes, electronic delivery via e-mail.

24       THE COURT:  To your home computer?

25       THE PLAINTIFF:  To my e-mail address which I

*Proceedings*                                                16

1   retrieved on my phone or any way accessed.

2          THE COURT:  Well, did you then read the whole

3   contract?

4          THE PLAINTIFF:  Well, like I said, I believe I did,

5   but I don't recall the arbitration section of it.

6          THE COURT:  How much education --

7          THE PLAINTIFF:  That was --

8          THE COURT:  I'm sorry?

9          THE PLAINTIFF:  That was over a year and about a

10  year-and-a-half now.  So I don't remember.  I wouldn't

11  remember it.

12         THE COURT:  What's your education?

13         THE PLAINTIFF:  I have half year of college.

14         THE COURT:  Where?

15         THE PLAINTIFF:  At University of Phoenix.

16         THE COURT:  Virginia?

17         THE PLAINTIFF:  No, I actually did online classes.

18         THE COURT:  I can't hear you.

19         THE PLAINTIFF:  Online classes.

20         THE COURT:  Do you have a high school diploma?

21         THE PLAINTIFF:  Yes, I do.

22         THE COURT:  From where?

23         THE PLAINTIFF:  Norman Thomas High School in

24  Manhattan, New York City.

25         THE COURT:  Do you know what arbitration is?

*Proceedings*                                                          17

1          THE PLAINTIFF:  Not really.  Not to specifics, no.

2          THE COURT:  What did you think that arbitration

3     meant?

4          THE PLAINTIFF:  Like I say, I don't remember from

5     then the entire contract because it was over a year ago and a

6     lot happens in a year.

7          THE COURT:  What's the practice with respect to

8     bringing this arbitration clause to the attention of

9     employees?

10          MS. WAKE:  Make sure I'm understanding the question

11     correctly.

12          What is Instacart's practice in bringing arbitration

13     to the contractors or employees?

14          THE COURT:  Yes.

15          MS. WAKE:  It's all done through the contract that

16     we submit to them and have them review and sign.

17          THE COURT:  Do you e-mail the full contract,

18     including the arbitration clause?

19          MS. WAKE:  Yes, the arbitration clause is part of

20     the contract that the applicant is reviewing.

21          THE COURT:  Well, how do they get it on their

22     computer?  Do they have to see the whole arbitration clause in

23     order to sign it?

24          MS. WAKE:  Yeah.  So, what Instacart does is we send

25     them an e-mail to the e-mail address that they provide and

*Proceedings*                                                18

1   through that e-mail they click through to a link that sends it

2   to a third party site called Hello Sign, which is electronic

3   signature platform, and they are able to review the contract

4   through that link or they can download it and review it at

5   their leisure at that point.

6              THE COURT:  Well, does the arbitration clause come

7   on to the screen automatically?

8              MS. WAKE:  Yes.  It's a multipage document, so they

9   would have to go through the document and the arbitration

10  clause is within the document.  It's not on the first page.

11             THE COURT:  Can you skip the agreement and go to

12  signing?

13             MS. WAKE:  No, you have to scroll down through the

14  entire agreement to get to the signature page.

15             THE COURT:  Is that right?

16             THE PLAINTIFF:  Like I said, I don't recall exactly.

17             THE COURT:  But you don't disagree that you had the

18  opportunity and had to scroll down to get to the signing page?

19             THE PLAINTIFF:  Well, you can, in any document, you

20  can scroll through the entire document and just skip whatever

21  you want if you choose to.

22             THE COURT:  I understand.

23             THE PLAINTIFF:  And then skip to whatever section.

24             THE COURT:  But there was no shortcut, you had to

25  scroll through?

*Proceedings*                                                    19

1          THE PLAINTIFF:  I believe so, yeah.

2          THE COURT:  All right.  Well, I've got to find that

3     on the facts this witness and the plaintiff had an

4     opportunity.

5          English is your first language, correct?

6          THE PLAINTIFF:  Yes, correct.

7          THE COURT:  And you had a high school diploma, so

8     there's no question that you could read it.

9          THE PLAINTIFF:  Correct.

10         THE COURT:  Now, that's out of the case.

11         Well, do we have before us now all the cases in the

12    Second Circuit dealing with the application of arbitration

13    through these Fair Labor Standards cases?

14         MR. HASSAN:  As far as I know, yes, Your Honor.  I

15    think Sutherland is the only published decision from the

16    Second Circuit.

17         MR. BERKOWITZ:  As far as I know, Sutherland is the

18    key decision.  I don't know if there's other decisions that

19    may reference Sutherland or otherwise.

20         THE COURT:  What about the district court, do we

21    have the district court decisions now?

22         MR. BERKOWITZ:  Any arbitration FLSA case?  I'm not

23    sure, I don't know that we've looked exhaustively at that, but

24    we've looked -- certainly Sutherland is the -- is the key

25    case.

*Proceedings*                                                    20

1       THE COURT:  Well, what have other district courts

2  done?  Have any district courts disagreed with your view?

3       MR. BERKOWITZ:  No court, we've looked at quite a

4  few courts, and as far as I'm aware, there is no court that

5  has gone, has decided this issue differently.  We decided the

6  Cobarruviaz case, which you read from, Your Honor, also

7  involved FLSA cases and also involved New York Labor Law

8  cases.

9       We also cited in our reply brief, I believe, the

10 case called Patterson.  I can find the cite for the Court.

11 So, in addition to the Sutherland case, there's the two

12 district course cases we cited, both of which are Southern

13 District of New York cases, not Eastern District, but Southern

14 District of New York cases, were the Patterson v. Raymours

15 Furnitures case, which is found at 96 F.Supp.3d 71.  It's a

16 2015 case.  The other case we cited is Lavoice v. UBS

17 Financial, which is another Southern District 2012 case which

18 you can find at 2012 WL 124590.  And in footnote 3 of our

19 brief, we have quite a lengthy list of the other Court of

20 Appeals decisions, all of which have agreed with Sutherland

21 that, to quote the Fourth Circuit, for example, quote, there

22 is nothing in the text indicating that Congress intended to

23 preclude arbitration of FLSA claims, and that's the Adkins

24 case, which is 303 F.3d 496.  And we then cite also cases from

25 the Ninth Circuit, the First Circuit, the Third Circuit, the

*Proceedings*                                                          21

1   Fifth Circuit, the Eighth Circuit and the Eleventh Circuit,

2   all of which ruled in the same manner that Sutherland did in

3   the Second Circuit.

4           THE COURT:  Now, I'm going to do what I indicated.

5   It's stipulated that these provisions are severed either under

6   California law or federal law that are objectionable.

7           I find that the plaintiff had an opportunity,

8   reasonable opportunity, to examine the clause and to

9   understand it, and there was no overreaching in connection

10  with presenting it to the prospective employee.  That as

11  narrowed to eliminating the objectionable clauses, the

12  arbitration clause is enforceable.  And I'm going to stay the

13  case.

14          So, as I understand it, the defendant will make an

15  application to JAMS.

16          MR. BERKOWITZ:  Yes, Your Honor.

17          THE COURT:  If JAMS refuses to take the case on the

18  ground that its procedures prevent it from taking this kind of

19  case, either side can come back to the court and we'll proceed

20  with the case.

21          The parties are directed to take steps, and JAMS is

22  requested to take steps, to quickly decide this issue so that

23  the plaintiff's substantive rights can be promptly discussed.

24          Okay?

25          MR. BERKOWITZ:  Yes, Your Honor.

*Proceedings*                                                      22

1              MR. HASSAN:  Thank you.

2              THE COURT:  Thank you.

3              Are you working now?

4              THE PLAINTIFF:  Yes.

5              THE COURT:  You are working?

6              THE PLAINTIFF:  Yes.

7              THE COURT:  Okay.

8              MR. BERKOWITZ:  Thank you, Your Honor.

9              MR. HASSAN:  Thank you, Your Honor.

10             MR. BERKOWITZ:  Your Honor, we have also I guess a

11   3:00 or 3:30 case management conference with Judge Pollak.

12   Will that be vacated, or should we appear?

13             THE COURT:  No, vacated, but go down and let the

14   magistrate judge know.

15             MR. BERKOWITZ:  Great.  Thank you, Your Honor.

16             MR. HASSAN:  Thank you, Your Honor.

17             THE COURT:  Daily copy is ordered by the court,

18   costs by defendant.

19             (Time noted:  11:00 a.m.)

20

21

22

23

24

25